[No. B003693. Second Dist., Div. Two. Nov. 8, 1984.]

CHARLES J. BANKS et al., Plaintiffs and Appellants, v.
BOARD OF PHARMACY et al., Defendants and Respondents.

COUNSEL

Errol J. Gordon for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Robert McKim Bell, Deputy Attorney General, for Defendants and Respondents.

OPINION

**ROTH, P. J.**—Appellants appeal from a superior court judgment denying their petition for a writ of mandate against the Board of Pharmacy, a state administrative and licensing agency (the Board). We affirm.

Appellants are comprised of a pharmacist (appellant), licensed by the Board, and Intra World Wide of America, a pharmacy, also Board licensed, which pharmacist operates. On June 11 and 12, 1981, two Board of Phar-

macy inspectors performed an audit of appellant's supply of four dangerous drugs: Quaalude, Ritalin, Preludin and Tuinal. The inspectors discovered that the inventory on hand did not match the records for any of the four drugs. When informed of this, appellant searched for and found several mislaid and misfiled prescriptions. Even after this adjustment, there was a shortage of 1,013 Quaalude pills, 3,725 Ritalin pills, 691 Preludin pills, and an overage of 210 Tuinal capsules.

During the period covered by the audit, on September 17, 1979, someone had burglarized the pharmacy. No inventory was performed at that time to determine whether any dangerous drugs had been taken, nor was the Board notified. Title 16, California Administrative Code, section 1715.6 requires a pharmacist to notify the Board of any drug loss attributable to burglary. In addition, appellant's investigation subsequent to the Board audit, which included the use of polygraph tests, revealed that several of his employees had been stealing the subject drugs.

On October 13, 1982, the Board filed an accusation against appellant and his pharmacy. The hearing was held on February 23 and 24, 1983, before an administrative law judge. The judge refused to admit appellant's polygraph evidence concerning the thefts. He issued his proposed decision on April 12, which the Board adopted on May 13.

The decision included the following determination of issues: "1. Respondent [pharmacist] and Intra Drug are subject to disciplinary action under Business and Professions Code Sections 4350, 4350.5, and 4359, in that both respondents have been guilty of unprofessional conduct within the meaning of Business and Professions Code Sections 4350.5 and 4363, by reason of violations of the provisions of Section 4232 of the Business and Professions Code, as interpreted by Title 16, California Administrative Code, Section 1718, subdivision (3), and violations of the provisions of Sections 11205 and 11206 of the California Health and Safety Code and violations of the provisions of Title 21, U.S.C. Section 827, subdivision (a)(3) and Title 21, C.F.R. Section 1304.21, in that they have failed to maintain complete and accurate records of each dangerous drug and controlled substance received, sold, delivered or otherwise disposed of by reason of the facts set forth in Finding V above.

"2. It is determined that respondents have committed no active misconduct, but were negligent in their failure to insure adequate security and inventory control of the Schedule II and III drugs which are the subject of this proceeding.

"3. In considering the penalty to be imposed in this matter, consideration has been given to the facts set forth in Finding VI. [Appellant's evidence of theft.]

The Board disciplined appellant and his pharmacy as follows: "Pharmacist's certificate number PH 21933 and pharmacy license number ZH 15308 heretofore issued by the Board to respondents [pharmacist] and Intra World Wide Drug of America are, and each is, hereby revoked; provided, however, the orders of revocation are stayed and respondents are placed on a three (3) year period of probation commencing on the effective date of this order. The terms and conditions of probation are as follows:

"A. Respondents shall obey all federal, state and local laws as relate to the exercise of the privileges and duties of their licenses, and the rules of regulations of the Board;

"B. Respondents shall furnish such periodic written or oral reports as may be directed by the Board;

"C. Respondents shall submit their inventory, books and records and licensed premises to peer review, as may be determined by the Board;

"D. Respondent [pharmacist] shall take and pass such courses in continuing education as may be ordered by the Board;

"E. Respondent [pharmacist] shall supervise no interns during the probationary period, nor shall any officer or remployee [sic] of respondent Intra Drug conduct such supervision;

"F. In the event respondent [pharmacist] shall leave California to reside or to practice outside the state, respondents shall notify the Board in writing of the dates of departure and of return. Periods of residency or practice outside of California will not apply to the reduction of the probationary period as to either respondent.

"G. If respondents violate probation in any respect, the Board, after giving respondents notice and opportunity to be heard, may revoke probation and carry out the disciplinary order that was stayed. If an accusation or petition to revoke probation is filed against respondents during probation, the Board shall have continuing jurisdiction until the matter is final, and the period of probation shall be extended until the matter is final."

On June 21, 1983, appellant petitioned the superior court for a writ of mandate, which was denied on September 2, 1983. Appellant appeals to this court with half a dozen assignments of error.

■ Appellant first contends that there is insufficient evidence to support the Board's judgment. Initially, we note that appellant views the judgment

as stating two bases for discipline: One, failure to maintain complete and accurate records, and two, negligence in maintaining security and inventory control. Our reading of the decision is a bit different. It makes more sense to interpret the judgment as saying that negligent maintenance of security led to the inaccurate records. In other words, the Board found that the records were inaccurate (and hence the basis for discipline) not because of active misconduct, but because of negligent failure to maintain security.

Appellant asserts that there can be no negligence in this case, because an essential element, duty, was never established. He argues that "there is simply no evidence to establish a standard in the community regarding maintaining security and inventory control over the subject controlled substances." A community custom is merely evidence of the standard of care (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 501-502 [102 Cal.Rptr. 795, 498 P.2d 1043]); the concept has no application to this case. At bench a duty arises from the laws which appellant was found to have violated.

There is substantial evidence of negligent failure of security, in the form of the outside theft in September 1979, and the repeated thefts by employees. The former should have been reported to the Board. Appellant seeks to avoid responsibility for the latter. He may not. ██ " ' "The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license . . . ." By virtue of the ownership of a . . . license such owner has a responsibility to see to it that the license is not used in violation of the law.' [Citations.]" (*Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 360 [185 Cal.Rptr. 453, 650 P.2d 328].)

██ Aside from the thefts, appellant admits that after the audit he discovered some misfiled prescriptions which were considered and credited in the audit.

Appellant argues that the fact that there were shortages is legally and factually insufficient to conclude that the records were inaccurate. "Shortage" to us means "fewer drugs on the shelf than are reflected in the records." "Fewer drugs on the shelf than are reflected in the records" means "inaccurate records." Thus, "shortage" means "inaccurate records." The evidence is sufficient to sustain the judgment.

Appellant asserts that the Board impermissibly relied on the presumption in Health and Safety code section 11208. That section states: "In a prosecution under this division, proof that a defendant received or has had in his

possession at any time a greater amount of controlled substances than is accounted for by any record required by law or that the amount of controlled substances possessed by the defendant is a lesser amount than is accounted for by any record required by law is prima facie evidence of guilt."

We need not adjudicate the constitutionality of this section, because the administrative law judge attached little weight to the presumption. He remarked, when appellant's attorney brought up the question of section 11208: "Mr. Gordon, I am not going just on that." As noted above, there was sufficient independent evidence of guilt. We find that any error connected with Health and Safety Code section 11208 was harmless.

Appellant next contends that it was error to impose sanctions on his personal license, for two reasons. First, not all of the laws on which the decision is grounded, e.g., Business and Profession Code section 4232, apply to appellant personally. However, since some of the provisions undoubtedly may be applied against appellant (e.g., Health & Saf. Code, § 11205), this point is meritless.

Second, appellant contends that disciplining his license violates the equal protection clause of the Fourteenth Amendment, because a nonpharmacist in similar circumstances would not be held personally liable for recordkeeping infractions. We reject this contention. All laws create distinctions; when, as here, no "suspect" classification is drawn, such as one based on race or religion, the equal protection clause merely demands a rational relationship between the distinction drawn and a legitimate state purpose. (*Owens* v. *City of Signal Hill* (1984) 154 Cal.App.3d 123, 128 [201 Cal.Rptr. 70].) Here the Legislature could reasonably believe that a pharmacist, because of his training, would be more capable of safeguarding the drug supply and thus could more justly be held fully responsible. Equal protection is not offended and appellant's personal license was properly disciplined.

The next assignment of error is that the requirement of keeping complete and accurate records is unconstitutionally vague. This point, too, need not detain us long. A law may not forbid or require conduct in terms so amorphous that "men of common intelligence must necessarily guess at its meaning and differ as to its application." (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 491 [134 Cal.Rptr. 630, 556 P.2d 1081].) "Complete and accurate" is a notion well within the grasp of "men of common intelligence." The Pharmacy Board is not required, as appellant suggests, to

provide guidelines or training in recordkeeping. Keeping track of one's possessions is not an esoteric skill.

■ Appellant claims that the Board erred in applying federal law, in the form of Business and Professions Code section 4350.5, which declares to be unprofessional conduct "violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation or conspiring to violate any provision or term of this chapter or of the *applicable federal and state laws and regulations* governing pharmacy, including regulations established by the board." (Italics added.) Before amendment in 1982, this passage read: "conspiring to violate any provision or term of this chapter or of the *laws governing pharmacy* or of regulations established by the board." (Italics added.) Appellant asserts that this change in language is substantive, and that consequently federal law was not a basis for alleging unprofessional conduct on June 11 and 12, 1981, the dates of the audit.

Ordinarily, an alteration in statutory language should be interpreted as working a change in the law. (*Froid* v. *Fox* (1982) 132 Cal.App.3d 832, 837 [183 Cal.Rptr. 461].) It is not, however, inevitably true. In this instance, that would demand limiting the earlier version's phrase "the laws governing pharmacy" to the laws of California. This is unwarranted. "Laws," without qualification, generally include both state and national law. Our Legislature was surely aware of federal regulation of pharmacy. We think it unlikely that the Legislature intended no disciplinary repercussions to flow from violations of federal law. We therefore conclude that the amendment of section 4350.5 merely clarified the existing law, making no substantive change. Appellant was properly subject to discipline for violating federal law.

■ Finally, appellant complains that the Board wrongly excluded proffered evidence of polygraph tests administered to appellant and his employees. The results were offered to prove that appellant was not being deceptive when he had denied any knowledge of drug shortages, that three or four of his employees were being deceptive when they denied knowledge of the shortages, and that one employee refused to submit to a polygraph test.

The administrative law judge held that this evidence was not relevant to any material issue in the case. Appellant urges on appeal that this evidence is relevant to determination of the penalty. Since appellant was put on probation, a rather mild penalty, and was found only to be negligent in his recordkeeping, we find no prejudice flowing from exclusion of the evidence. There was no error.

The judgment is affirmed.

Compton, J., and Beach, J., concurred.