**In re GRAND JURY PROCEEDINGS.**

**John DOE, M.D. and Steve Roe, Witnesses-Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**Nos. 86–2351, 86–2353.**

United States Court of Appeals, Ninth Circuit.

Submitted to Motions Panel Aug. 25, 1986.

Decided Oct. 7, 1986.

**1166**

Robert E. Carey, Carey & Carey, Palo Alto, Cal., Victor D. Vertner, Vertner & Vertner, San Jose, Cal., for witnesses-appellants.

Eugene M. Thirolf, Randy S. Chartash, Office of Consumer Litigation, Washington, D.C.

John A. Mendez, U.S. Attys. Office, San Jose, Cal., for appellee.

Before WRIGHT, WALLACE and SCHROEDER, Circuit Judges.

PER CURIAM:

Dr. John Doe and Steve Roe,[1] targets of a grand jury investigation into illegal dispensation of anabolic steroids, androgenic hormones and other such drugs, appeal a contempt order for failure to comply with a subpoena duces tecum. Pursuant to 28 U.S.C. § 1826(b), this motions panel was required to rule by August 28, 1986. On August 27, we affirmed the district court's contempt order. Because we are faced with issues of first impression in this circuit, we now explain our reasoning.

BACKGROUND

Anabolic steroids and androgenic hormones are regulated as prescription drugs under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 353(b)(1). They also are regulated as "dangerous drugs" under California state law. Cal. Bus. & Prof. Code § 4211.

As a licensed physician, Doe is entitled to prescribe, dispense, and resell prescription drugs. The government believes that he treats many professional athletes in the course of his practice. Evidence before the grand jury indicates that Doe has purchased over one million dollars' worth of anabolic steroids and androgenic hormones from licensed and unlicensed manufacturers and distributors.

The government believes that Doe is guilty both of prescribing anabolic steroids and androgenic hormones without a legitimate medical purpose and of selling them on a wholesale basis to others for dispensation without a prescription. Roe, Doe's suspected co-conspirator, was found in possession of large quantities of these drugs located in a mini-warehouse.

On January 9, 1986, Doe was served with a grand jury subpoena to produce records related to his purchase, sale, and prescrip-

1. All documents and briefs in this matter have been filed under seal. Appellants' true names will not be revealed in this opinion.

tion of anabolic steroids and androgenic hormones. Paragraph II.1. of the subpoena requests documents showing Doe's authority to practice medicine, his form of business organization, his license to sell, receive or distribute prescription drugs, his authority to purchase prescription drugs, and a list of all his employees.

Paragraph II.2. requests any documents from January 1, 1981 to the present relating to Steve Roe, Roe's wife, and several drug manufacturers and distributors. Paragraph II.3. requests documents from January 1, 1983 to the present, detailing: (a) contracts for the purchase or sale of anabolic steroids or androgenic hormones; (b) any records of retail or wholesale sales of prescription drugs; (c) any prescriptions issued for anabolic steroids or androgenic hormones; (e) all incoming purchases of anabolic steroids or androgenic hormones; and (f) his dealings with several drug suppliers. Paragraph II.4. requests any and all documents from January 1, 1983 to the present detailing every order, sale and shipment of certain listed drugs.

On March 21, 1986, Doe moved to quash the subpoena on a number of grounds, including the Fifth Amendment, the physician-patient privilege, and his patients' right to privacy. He also contended that the investigation was barred by the Tenth Amendment. Roe intervened, claiming that the grand jury subpoena served on Doe implicated Roe's Fifth Amendment rights, too.

Following a hearing, the court entered three orders: (1) Order Denying Motion to Quash Or In The Alternative To Modify Subpoena Duces Tecum; (2) Order Denying Motion To Quash Subpoena Duces Tecum; and (3) Order Denying Petitioner's Request to Certify Order For Appeal.

On June 10, Doe appeared before the grand jury and refused to produce any documents in response to the subpoena. On July 16, the court adjudged Doe to be in contempt. It found that the grand jury subpoena called for records that Doe was required to maintain as a physician and distributor of pharmaceuticals under California law. It found also that neither Doe nor his patients had a constitutional right to privacy in the records sought by the subpoena, Doe had no assertable physician-patient privilege in this case, and he had no valid Tenth Amendment claim.

The court allowed him 24 hours to comply. On July 18, it ordered Doe's confinement. Doe and Roe appealed. We have jurisdiction under 28 U.S.C. § 1826(b), and we affirm.

ISSUES

(1) Does the "required records" exception to the Fifth Amendment privilege apply?

(2) Is production privileged by the physician-patient relationship?

(3) Is production privileged by the right to privacy?

(4) Is the investigation barred by the Tenth Amendment? and

(5) Is Doe entitled to modification of the subpoena?

ANALYSIS

I. *Standard of Review*

We review the court's finding of contempt under 28 U.S.C. § 1826 for abuse of discretion. *In re Grand Jury Proceedings,* 797 F.2d 906, 907 (10th Cir.1986).

II. *Required Records*

██ The Fifth Amendment privilege against self-incrimination applies to grand jury proceedings. *United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). The contents of voluntarily-kept business records do not fall within the scope of the privilege because the Fifth Amendment bars only compelled self-incrimination. *United States v. Doe,* 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984). Records that are required to be maintained by law are outside the scope of the privilege, provided certain conditions are met. *See Grosso v. United States,* 390 U.S. 62, 67–68, 88 S.Ct. 709, 713–14, 19 L.Ed.2d 906 (1968).

Under California law, all records of manufacture and of sale, purchase or disposi-

tion of dangerous drugs shall be maintained and open for inspection for at least three years from the date of making. Cal. Bus. & Prof. Code § 4232. Further, all prescriptions filled shall be kept on file and open for inspection for a period of at least three years. *Id.* at 4331.[2]

Doe claims that the state statutes fail to specify the means of recording dangerous drugs. He has submitted numerous conflicting declarations of members of the State Board of Pharmacy as to whether certain types of records must be kept.

▮ The absence of statutory guidance on accounting forms does not establish that Doe was not required to maintain his records. *Cf. Banks v. Board of Pharmacy*, 161 Cal.App.3d 708, 714–15, 207 Cal. Rptr. 835, 838–39 (1984) (pharmacy board not required to provide guidelines in recordkeeping). Doe also argues that the state statutes are void under the Due Process and Equal Protection clauses because they do not define "all records." These claims were not raised below and will not be considered on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Huettig & Schromm, Inc. v. Landscape Contractors*, 790 F.2d 1421, 1426 (9th Cir.1986).

▮ Doe next argues that, even if his records are "required" under California law, they do not fall within the required records exception. Under this doctrine, the Fifth Amendment privilege does not apply if: (1) the purpose of the government's inquiry is regulatory, not criminal; (2) the information requested is contained in documents of a kind the regulated party customarily keeps; and (3) the records have public aspects. *Grosso*, 390 U.S. at 67–68, 88 S.Ct. at 713–14.

▮ We reject Doe's contention that the California statutes are not regulatory be-cause they are now being used in a criminal proceeding. The statutes' purpose is to regulate the dispensation of dangerous drugs. It is irrelevant that records kept for regulatory purposes may be useful to a criminal grand jury investigation. *In re Subpoena Duces Tecum (Underhill)*, 781 F.2d 64, 67 (6th Cir.1986), *petition for cert. filed*, 54 U.S.L.W. 3699 (U.S. April 12, 1986) (No. 85–1668); *see also United States v. Rosenberg*, 515 F.2d 190 (9th Cir.) (required records introduced at trial), *cert. denied*, 423 U.S. 1031, 96 S.Ct. 562, 46 L.Ed.2d 404 (1975).

▮ Next, Doe argues that, in light of the ambiguity of the statutes, there is no class of documents that can be said to be "customarily maintained." But it is evident that Doe customarily maintained the documents in his possession.

Doe asserts also that confidential patient records have no "public aspects." This objection pertains only to patient files, not to records of purchases and sales. Patients' expectations of privacy do not negate a finding that there is a public aspect to the files under the state regulatory schemes. *See In re Kenny*, 715 F.2d 51, 53 (2d Cir. 1983); *In re Doe*, 711 F.2d 1187, 1192 (2d Cir.1983).

Finally, Doe argues that we should abolish the required records exception. In *United States v. Doe*, 465 U.S. at 612–13, 104 S.Ct. at 1242–43, the Court held that, although the contents of voluntarily-kept records are not protected, the act of producing them constitutes a privileged testimonial communication:

> Although the contents of a document may not be privileged, the act of producing the document may be ... A government subpoena compels the holder of the document to perform an act that may

---

**2.** Section 4232 provides in relevant part:

  All records of manufacture and of sale, purchase or disposition of dangerous drugs shall be at all times, during business hours, open to inspection by authorized officers of the law, and shall be preserved for at least three years from the date of making.

Section 4331 provides:

  All prescriptions filled shall be kept on file and open for inspection by duly constituted authorities for a period of at least three years....

have testimonial aspects and an incriminating effect.

Citation omitted.

The Second Circuit noted recently,

Doe did not involve required records, see 465 U.S. at 607 n. 3, 104 S.Ct. at 1240 n. 3, and we find nothing in its 'act of production' analysis that can be construed as weakening the required records exception.

*In re Two Grand Jury Subpoenae Duces Tecum,* 793 F.2d 69, 73 (2d Cir.1986); *see also Underhill,* 781 F.2d at 69–70.

We agree with this analysis, and therefore hold that the "required records" exception to the Fifth Amendment privilege survived *Doe.*

### III. *Physician-Patient Privilege*

■ Doe concedes that there exists no physician-patient testimonial privilege under federal law. *See Whalen v. Roe,* 429 U.S. 589, 602 n. 28, 97 S.Ct. 869, 877 n. 28, 51 L.Ed.2d 64 (1977); *United States v. Meagher,* 531 F.2d 752, 753 (5th Cir.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976). But he argues that Fed.R.Evid. 501 authorizes us to develop such a privilege. That rule provides in relevant part:

the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

Doe relies on California statutory law, which provides for such a privilege. Cal. Evid. Code § 994. Although he acknowledges that state-created principles of privilege are not controlling on federal common law, *see In re Pebsworth,* 705 F.2d 261, 262 (7th Cir.1983), he argues that the privilege should be respected here as a matter of comity.

He asserts that the government's need for the records is outweighed by the policies underlying the state-created privilege.

We disagree. Even the state-created privilege does not apply in criminal proceedings. Cal.Evid. Code § 998.

### IV. *Right to Privacy* [3]

■ There is no general right to privacy before the grand jury. *Calandra,* 414 U.S. at 353, 94 S.Ct. at 622. Such proceedings are secret, Fed.R.Crim.P. 6(e), and the information sought by the subpoena or any other information presented to the grand jury may be disclosed only to the extent authorized by law. *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979).

Patient charts have public aspects not protected by the right to privacy. *Doe,* 711 F.2d at 1192. In *Whalen v. Roe,* 429 U.S. at 602, 97 S.Ct. at 877, the Court noted that "disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient."

■ The Court concluded that the State's interest in prohibiting illegal drug activity outweighed the limited invasion of privacy. *Id.* It upheld a New York statute requiring the names of all persons who obtained certain drugs to be forwarded to the state health department. Thus, a person possesses no reasonable expectation that his medical history will remain completely confidential.

### V. *Tenth Amendment*

■ Doe argues that the present investigation violates the Tenth Amendment because control of medical practice is beyond the power of the federal government, citing *Linder v. United States,* 268 U.S. 5, 18, 45 S.Ct. 446, 449, 69 L.Ed. 819 (1925). But the Commerce Clause empowers the federal government to regulate prescription drugs. *Carnohan v. United States,*

---

**3.** Like the physician-patient privilege, this argument pertains only to patient charts, not records of Doe's resale drug business.

616 F.2d 1120, 1121 (9th Cir.1980) (per curiam). Thus, a physician may not defend a federal prosecution for improper drug prescription practices on Tenth Amendment grounds. *Rosenberg*, 515 F.2d at 198.[4]

### VI. *Modification of Subpoena*

Stressing that a subpoena may require production of relevant documents only, *United States v. Gurule*, 437 F.2d 239, 241 (10th Cir.1970), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2202, 29 L.Ed.2d 679 (1971), Doe argues that the subpoena is overbroad because: (1) it requires production of documents dating back to 1983; and (2) requires production of wholesale drug records as to any prescription drug, not just anabolic steroids and androgenic hormones.

■■■ On the first point, he relies on the government's statement in its opposition to the motion to quash that it is investigating the disposition of the 100,000 doses of anabolic steroids and androgenic hormones he ordered in 1984. The statute of limitations is five years. Due to the presumption of regularity of grand jury proceedings, *see United States v. Anderson*, 532 F.2d 1218, 1222 (9th Cir.), *cert. denied*, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976), the government should not be held to its general description of the nature of the investigation.

■■■ His argument that the records of wholesale transactions of prescription drugs should be limited to anabolic steroids and androgenic hormones is without merit. The volume of Doe's transactions in anabolic steroids and androgenic hormones as compared to other prescription drugs clearly is relevant to the grand jury's investigation.

### CONCLUSION

Confirming our order of August 27, the order of contempt against Dr. Doe is AFFIRMED.

---

**4.** Doe also argues that the grand jury investigation violates the Tenth Amendment because it entails an evaluation considerably beyond the expertise of lay grand jurists. He cites no authority for the proposition that the unauthorized dispensation of prescription drugs is insulated from prosecution because it may involve complex medical decisions. Nor have we found any.