**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Vu NGUYEN, Defendant–Appellant.**

No. 05–10399.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2006.

Filed Feb. 22, 2008.

As Amended on Denial of Rehearing and Rehearing En Banc April 10, 2008

James T. Chou, Esq., Office of the U.S. Attorney, San Francisco, CA, Jane E. Shoemaker, Ausa Fax, Office of the U.S. Attorney Lloyd George, Las Vegas, NV, for Plaintiff–Appellee.

Michael J. Kennedy, Esq., Federal Public Defender's Office, Las Vegas, NV, Michael D. Powell, Esq., Federal Public Defender's Office, Reno, NV, for Defendant–Appellant.

Before: B. FLETCHER and BERZON, Circuit Judges, and TRAGER *, Senior Judge.

### MEMORANDUM **

Vu Nguyen appeals from his conviction after a jury trial for crimes relating to the

---

\* The Honorable David G. Trager, Senior United States District Judge for the Eastern District of New York, sitting by designation.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

robbery of a Las Vegas jewelry store and a homicide committed during the robbery by his co-conspirator, Duong. We affirm.[1]

■ 1. "No evidence" testimony: We assume without deciding that Agent Wirth's testimony that he had developed "no evidence" to link anyone other than Nguyen and Duong to the crime was admitted in error. As Nguyen's defense was that some different associate of Duong's was the second perpetrator, the harmlessness question is close. We are satisfied, however, that the evidence of Nguyen's guilt was sufficiently strong to render any error harmless.

Two cooperating witnesses placed Nguyen in Las Vegas with Duong on the day of the crime. The testimony of several other cooperating witnesses linked Nguyen to the crime by implication—by, for example, reporting Nguyen's comments about the stolen watches or Duong's statements implicating Nguyen. Most significantly, although many of the cooperators' stories had changed from earlier interviews with law enforcement, cell phone records corroborated much of the trial testimony about their whereabouts, actions, and communications. The cell phone records also showed Nguyen's frequent communications with Duong around the time of the robbery and homicide, except during the period when, according to the prosecution's chronology, the two would have been together preparing for and committing the crime and would have had no need to call each other's cell phones.

Finally, Nguyen's defense that someone else committed the crime rested on the testimony of eyewitnesses that the two robbers were different heights, evidence Duong and Nguyen are the same height, and testimony that some of Duong's other associates are shorter than Duong. But Nguyen only offered additional evidence implicating one associate of Duong's, and the government presented strong evidence that this associate was in Los Angeles at the time of the robbery. The two eyewitnesses, as the government argued, observed the robbers only during the terrifying 85-second robbery. The jury viewed a videotape of the robbery taken by a security camera that provided some indication of the relative heights of the robbers, and had ample opportunity to consider and weigh all the evidence presented on this issue.

Given the evidence pointing to Nguyen and the absence of any evidence pointing to any other individual, it is "more probable than not that the erroneous admission of the evidence did not affect the jury's verdict." *United States v. Ramirez-Robles,* 386 F.3d 1234, 1244 (9th Cir.2004). The jury most likely would have reached the same conclusion with or without Agent Wirth's testimony—that no objective evidence pointed to any other perpetrator, which is in essence what Wirth said.

■ 2. "Asian culture" testimony: Wirth testified that members of "the Asian culture" (1) are reluctant to provide information to law enforcement, and (2) omit facts during interviews with law enforcement. The testimony was made with respect to witnesses rather than to Nguyen, and it did not imply that members of his ethnic group were likely to commit crimes. *Cf. United States v. Cabrera,* 222 F.3d 590 (9th Cir.2000). Further, most of the government's witnesses were Asian, so the testimony impacted both sides. Thus, although the testimony should have been avoided, its admission did not violate Nguyen's right to a fair trial.

1. Given the parties' familiarity with the facts and procedural history, we do not recount them here except as necessary to explain our decision.

**■ 3. Vouching:** Wirth's testimony that "[t]he majority of the evidence obtained in this case was brought forth by cooperating witnesses" was not vouching for the testimony of the cooperating witnesses over that of the eyewitnesses. Instead, it was merely a statement of the obvious fact that, because the eyewitnesses could be of little help in identifying the fully-masked perpetrators, cooperators were critical to the government's case.

**■** Nguyen also challenges Wirth's testimony that certain witnesses lied to him in early interviews. This testimony perhaps suggests that Wirth knew which contradictory statements were true and which were lies, and thus that he was "vouching" for the credibility of the cooperators' trial testimony.

Even assuming there was vouching, any error was harmless. Significantly, as noted above, many critical aspects of the cooperators' testimony were corroborated by cell phone records. Further, on cross-examination of these witnesses, Nguyen fully brought out the inconsistencies in their prior statements and their likely biases because of circumstances such as immunity agreements, permitting the jury to make its own decision about the veracity of the testimony.

**■ 4. Summary of uncharged crimes:** Nguyen objects to oral testimony presenting an exhibit summarizing crimes for which Duong and others had been charged, including the crime for which Nguyen stood trial. Wirth's testimony presenting the unobjected-to exhibit was not impermissible vouching, because it added no substantial content to the exhibit, adding only what items were stolen during each robbery and which witness or witnesses had testified to each crime. Nor was Wirth's testimony about the Las Vegas robbery error: Wirth did not testify as to *any* specifics or details of the crime.

**■ 5. Dam's testimony:** Nguyen argues for the first time on appeal that the government knowingly permitted a cooperating witness, Dam, to testify falsely. Dam testified that Nguyen told Dam he was worried about a luxury watch seized by the police when he was arrested on an unrelated charge some time after the robbery, because the watch could link him to a robbery "he did up north." The defense put into evidence jail records of this post-robbery arrest, which did not indicate that a watch was seized during this incident. Also, a witness present at the arrest testified that he did not see Nguyen wearing a watch that evening. But there is no definitive evidence that Dam's testimony was actually false, and no evidence at all that the government knew of any falsity. *See United States v. Baker,* 850 F.2d 1365, 1371–72 (9th Cir.1988).

**6. Grand jury abuse:** Nguyen's challenge to the grand jury process fails because he cannot establish that the government's sole purpose for subpoenaing Cuong and Luu was to develop evidence for Nguyen's upcoming trial. *See In re Grand Jury Proceedings,* 586 F.2d 724, 725 (9th Cir.1978) (per curiam). Although the timing of the subpoenas raises questions about the government's intent, transcripts of the grand jury proceedings submitted under seal do not contradict the government's assertion that it was trying to determine whether to charge anyone else—not necessarily Cuong or Luu—with involvement in the Las Vegas crime before the statute of limitations ran out. *See In re Grand Jury Proceedings,* 801 F.2d 1164, 1170 (9th Cir.1986) (there is a "presumption of regularity of grand jury proceedings").

**■ 7. Discovery violations:** The government concedes that it failed to disclose, prior to an arresting officer's testi-

mony, Nguyen's statement to the officer that he owned a Mercedes. At trial, Nguyen refused the government's offer to have the testimony stricken and the court's offer of an instruction to disregard it. Although Nguyen was entitled to refuse such ameliorative measures, the court's refusal to grant a mistrial in the face of that refusal was not an abuse of discretion. Other witnesses testified that Nguyen drove a Mercedes, and the Mercedes did not directly link Nguyen to the crime. Thus, we find no "reasonable probability that the result of the proceeding would have been different had the information been disclosed." *See United States v. Amlani,* 111 F.3d 705, 712 (9th Cir.1997).

Nguyen also complains that the government failed, until after the beginning of the defense case, to disclose police reports that Duong contacted Agent Wirth several times and told him that he wanted to confess crimes. This testimony came out on rebuttal, in response to the testimony of a defense witness that Duong denied involvement in any of the crimes for which he had been charged. Agent Wirth's testimony about Duong's calls was not exculpatory. Nor has Nguyen made any showing that it was material to the preparation of the defense. The government therefore had no obligation to produce the reports until the need for Agent Wirth's rebuttal testimony became apparent. *Cf.* FED. R. CRIM. P. 16(a)(1)(E); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The reports were disclosed after the defense witness testified, which was the appropriate time.

Nguyen further argues that the admission of this testimony violated the Confrontation Clause. We assume that Duong's statements were testimonial, *see Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 2274 n. 1, 165 L.Ed.2d 224 (2006), but any error was harmless. The testimony was that Duong told Wirth he wanted to confess his participation in crimes and asked that, in return, charges be dropped against one individual, who was not Nguyen. Nguyen did not argue that Duong was not involved in the crime, and the challenged testimony did not implicate Nguyen.

**8. Suppression:** We decline to consider Nguyen's argument that the initial seizure of his wallet was illegal and that the address book and its contents are the fruits of that illegal seizure. Nguyen did not challenge the legality of the initial seizure below. He has not shown good cause for this failure, and thus cannot raise the issue here. *See United States v. Wright,* 215 F.3d 1020, 1026 (9th Cir.2000) ("Although Wright did file a motion to suppress various items of evidence, ... he never argued that those items of evidence were the fruits of an illegal arrest."); *see also United States v. Murillo,* 288 F.3d 1126, 1135 (9th Cir.2002).

**9. Summary of cell phone records:** The admission of Agent Dwyer's summary testimony and charts to (a) link specific telephone numbers to Nguyen, Duong, and others through previous witnesses' testimony and previously admitted evidence, and (b) map the calls made between these various phone numbers during the relevant periods, was not error. *See, e.g., United States v. Shirley,* 884 F.2d 1130, 1133–34 (9th Cir.1989). We note that the district court properly instructed the jury that the charts and summaries were only as good as the underlying evidence on which they were based.

Nor was the admission of the evidence error because cell-site records, able to show the geographic location of the cell phones at the time of a call, had been destroyed. There is no evidence that the cell-site records were ever in the posses-

sion or control of the government or that the government had anything to do with their destruction. Thus, neither the majority opinion nor now-Justice Kennedy's concurrence in *United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir.1979) (en banc), directs that the otherwise admissible cell phone records should be excluded.

**10. Co-conspirators' statements:** Nguyen challenges the admission of certain co-conspirators' statements on Confrontation Clause and hearsay grounds.

■ The Confrontation Clause does not bar the admission of this testimony. Many of the challenged statements were statements in furtherance of a conspiracy, which are "by their nature ... not testimonial." *Crawford v. Washington*, 541 U.S. 36, 56, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *see also United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir.2005).

The rest of the challenged statements may not have been made in *furtherance* of any conspiracy, but they were made between co-conspirators in casual conversation. Assuming that statements made to someone other than law enforcement personnel can be testimonial, *see Davis*, 126 S.Ct. at 2274 n. 2 (leaving the question open), the statements at issue here are plainly non-testimonial: They did not approach "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)); *see also id.* at 51, 124 S.Ct. 1354 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."); *Horton v. Allen*, 370 F.3d 75, 83–84 (1st Cir.2004).

Nor did the district court err in finding that the objectives of the criminal conspiracy included disposing of the stolen watches, and that certain statements made after the robbery could thus be admitted as statements in furtherance of the conspiracy. *See Atkins v. United States*, 307 F.2d 937, 940 (9th Cir.1962) ("The criminal aim of the conspiracy was not to commit the robbery, but to make a profit by illegal means. The conspiracy, therefore, continued at least until the fruits of the crime had been disposed of.").

■ **11. *Pinkerton* liability:** Pursuant to *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), a defendant can be held "criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Garcia*, 497 F.3d 964, 967 (9th Cir.2007) (citation omitted). Nguyen participated in a robbery of a jewelry store, during business hours, in which his partner carried an assault rifle. Thus, there was sufficient evidence for the jury to conclude that it was reasonably foreseeable that someone might be killed during the commission of the robbery.

AFFIRMED.

B. FLETCHER, Circuit Judge, dissenting.

I respectfully dissent.

The admission of detective Wirth's testimony was error and it was not harmless. No eye witness or physical evidence tied Nguyen to the crime or the crime scene. The only reliable evidence from which inferences could be drawn were the cell phone records that only proved that the known robber-shooter and Nguyen communicated frequently before the robbery and after the robbery but not during the robbery. Wirth's testimony suggested that no one other than Nguyen could have committed the robbery, which could have

tipped the scale in the jury's mind. Without it, it is probable that the jury would not have convicted.