UNITED STATES of America, Appellee,

v.

Bradley Ernest BERCIER, Appellant.

No. 87–5407.

United States Court of Appeals,
Eighth Circuit.

Submitted May 9, 1988.

Decided June 9, 1988.

Jean P. Hannig, Fargo, N.D., for appellant.

Gary Annear, Fargo, N.D., for appellee.

Before HEANEY, Circuit Judge, ROSS, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Bradley Ernest Bercier appeals from a final judgment entered in the District Court[1] for the District of North Dakota upon a jury verdict finding him guilty of involuntary manslaughter by driving a motor vehicle while intoxicated in violation of 18 U.S.C. §§ 1112(a), 1153. The district court sentenced appellant to three years imprisonment and imposed a special assessment of $50. For reversal appellant argues the district court erred in (1) denying his application for expert services pursuant to 18 U.S.C. § 3006A(e)(1) without a hearing and (2) admitting into evidence certain statements in violation of his physician-patient privilege. For the reasons discussed below, we affirm the judgment of the district court.

The accident occurred at about 9:30 p.m. on October 3, 1986, on the Turtle Mountain Indian Reservation. Clarence Davis, Sr., and his son were returning home after playing basketball. Davis was driving; he was travelling west on a two-lane highway. After signalling to make a left turn, he slowed down and was turning left off the highway when his vehicle was struck from behind by a second vehicle attempting to pass on the left. It was later estimated that the second vehicle had been travelling at about 75 m.p.h. at the time of the accident. As a result of the collision, Davis was thrown from his vehicle and fatally injured. His son suffered a broken arm and leg.

Emergency medical personnel found three persons in the front seat of the second vehicle—appellant, Steve Desjarlais and John Bercier. Appellant was found pinned behind the steering wheel in a seated position, with his knees under the dash and his feet under the brake pedal. Steve Desjarlais was in the middle; John Bercier was on the passenger side.

At the hospital emergency room, appellant was treated for "flailed chest," a type of chest injury that is common in automobile accidents and typically caused by the steering wheel striking the driver's chest, and other injuries. The treating emergency room physician, Dr. Catherine McGinnis, asked appellant whether he had been driving; appellant answered "yes." Dr. McGinnis also asked appellant whether he hit the steering wheel with his chest; appellant answered "yes." Dr. McGinnis also testified that, at the time she examined him in the emergency room, appellant appeared intoxicated and that he was in a lot of pain and very uncomfortable.

John Bercier remembered little about the accident except that all three of them had been drinking all day the day of the accident. Desjarlais also testified that they had been drinking all day the day of the accident. According to Desjarlais, appellant was driving at the time of the accident, Bercier was in the front passenger seat and he (Desjarlais) was in the back seat. Appellant also testified that they had all been drinking all day and that he remembered little, if anything, about the accident; however, appellant stated that his last memory was that he had been sitting in the front seat between Bercier and Desjarlais and that Desjarlais was driving.

The government's theory of the case was that appellant was driving the second vehicle at the time of the accident. Appellant was indicted in early May 1987. Counsel was appointed to represent him on May 21, 1987. Appellant was arraigned on May 23, 1987, and the trial was scheduled to begin August 3, 1987. The theory of the defense was that appellant had not in fact been driving at the time of the accident.

On July 7, 1987, appellant filed an application for expert services pursuant to 18 U.S.C. § 3006A(e)(1). He wanted a psychologist to hypnotize him to help him to remember who had been driving at the time of the accident. The affidavit in support identified the psychologist, his qualifications and the amount of funds that would be necessary to retain his professional services. The district court ordered a hearing to be held on appellant's application and

1. The Honorable Paul Benson, United States Senior District Judge for the District of North Dakota.

directed defense counsel to arrange a date for the hearing at which both the psychologist and appellant were to be present. Unfortunately, due to scheduling conflicts, defense counsel could not arrange a time before trial when the psychologist could appear at a hearing on the application for expert services. In addition, the psychologist was going out of town from July 24, 1987, to August 10, 1987, and thus would not have been available to testify at the trial scheduled to begin on August 3, 1987. For these reasons, on July 21, 1987, appellant filed a motion for a continuance and proposed holding a hearing on the application for expert services on August 14, 1987.

On July 24, 1987, the district court denied appellant's motion for a continuance. Although the district court did not enter a separate order denying the application for expert services, denial of the application was implicit in the denial of the motion for a continuance. During a pre-trial conference, the district court set forth the following reasons for denying the motion for a continuance: the application for expert services was untimely filed (some six weeks after appointment and only four weeks before trial was scheduled to begin); there was no showing that there was a scientific basis to believe that hypnosis could effectively enhance memory lost as a result of alcoholic blackout; the admissibility of hypnotically refreshed testimony was problematical if appellant decided not to testify; and trial would be further delayed if the government also sought a continuance in order to consult with its psychological experts.

Trial proceeded as originally scheduled. Appellant testified that he could not remember any of the events immediately before, during or after the accident. The jury found appellant guilty of involuntary manslaughter by driving a motor vehicle while intoxicated. This appeal followed.

First, appellant argues the district court erred in denying his application for expert services without a hearing. Appellant argues that the expert services (that is, hypnosis) were necessary to the preparation and presentation of his theory of defense that he was not the driver. In connection with this argument, appellant argues the district court abused its discretion in denying his motion for a continuance.

Title 18 U.S.C. § 3006A(e)(1) provides that

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

The district court should not rule on an application for expert services without first conducting an ex parte proceeding as required by the statute. *See United States v. Theriault*, 440 F.2d 713, 715 (5th Cir. 1971), *cert. denied*, 411 U.S. 984, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973); *cf. United States v. Goodwin*, 770 F.2d 631, 634–35 (7th Cir.1985) (no ex parte proceeding necessary where defendant failed to state why services requested necessary in application), *cert. denied*, 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986). The decision to grant or deny an application for expert services pursuant to 18 U.S.C. § 3006A(e)(1) is committed to the sound discretion of the district court; the denial or limitation of funds for expert services will not be reversed absent a showing of prejudice. *E.g., United States v. Valverde*, 846 F.2d 513, 516 (8th Cir.1988); *United States v. Bledsoe*, 674 F.2d 647, 668 (8th Cir.), *cert. denied*, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982).

In the present case, the district court had agreed to hold a hearing. The district court did not hold the hearing because the psychologist was not available to testify until after the trial was scheduled to begin and the district court was unwilling to grant a continuance. We cannot say that the district court abused its discretion in denying the motion for a continuance. *See, e.g., United States v. Webb*, 533 F.2d 391, 395 (8th Cir.1976); *see also United*

*States v. Fountain,* 768 F.2d 790, 794–95 (7th Cir.1985), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1647, 90 L.Ed.2d 191 (1986); *cf. United States v. Rinchack,* 820 F.2d 1557, 1564 (11th Cir.1987) (application for psychiatric expert filed 30 minutes before competency hearing).

In any event, even if we accept appellant's argument and assume that appellant would have testified, post-hypnosis,[2] that he was not driving at the time of the accident, appellant has failed to show prejudice. There was overwhelming evidence in the record that appellant was driving at the time of the accident. The emergency medical personnel found appellant seated on the driver's side of the front seat. Of the three individuals in the second vehicle, only appellant suffered a "flailed chest" injury. And, as discussed further below, appellant admitted to his treating physician that he had been driving at the time of the accident and had hit the steering wheel with his chest.

■ Appellant next argues the district court erred in admitting into evidence certain statements he made to his treating physician. In response to questions asked by Dr. McGinnis in the emergency room, appellant admitted that he had been driving and had hit the steering wheel with his chest. Appellant argues admission of these statements into evidence violated his physician-patient privilege.

We hold the district court did not abuse its discretion in admitting the statements into evidence. Fed.R.Evid. 501 provides in part that

> [e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

Because no physician-privilege existed at common law, *see Whalen v. Roe,* 429 U.S. 589, 602 n. 28, 97 S.Ct. 869, 877 n. 28, 51 L.Ed.2d 64 (1977), federal courts do not recognize the physician-patient privilege in federal criminal proceedings. *E.g., United States v. Burzynski Cancer Research Institute,* 819 F.2d 1301, 1311 & n. 33 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); *In re Grand Jury Proceedings (Doe),* 801 F.2d 1164, 1169 (9th Cir.1986) (per curiam); *United States v. Meagher,* 531 F.2d 752, 753 (5th Cir.), *cert. denied,* 429 U.S. 853, 97 S.Ct. 146, 50 L.Ed.2d 128 (1976). *But cf. In re Zuniga,* 714 F.2d 632, 636–42 (6th Cir.) (recognizing psychotherapist-patient privilege; discussion of proposed Fed.R.Evid. 504), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983).

Accordingly, the judgment of the district court is affirmed.

---

**2.** *See Rock v. Arkansas,* —— U.S. ——, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (holding that state per se rule excluding all hypnotically refreshed testimony infringes impermissibly on a criminal defendant's right to testify on his or her own behalf).