**Elliott C. CUNNINGHAM, Plaintiff,**

v.

**SOUTHLAKE CENTER FOR MENTAL HEALTH, INC., an Indiana not-for-profit corporation; Lee C. Strawhun, President of Southlake Center for Mental Health, Inc.; County of Lake; and Jeff Miller, Individually and in his capacity as Warden of the Lake County Jail, Defendants.**

Civ. No. H 87–376.

United States District Court,
N.D. Indiana,
Hammond Division.

May 8, 1989.

As Amended May 10, 1989.

Ivan E. Bodensteiner, Valparaiso, Ind., for plaintiff.

Steven A. Johnson, Thomas Greenberg, Merrillville, Ind., for Southlake and Strawhun.

Mark A. Psimos, Merrillville, Ind., for County of Lake.

Charles H. Graddick, Gary, Ind., for Jeff Miller.

ORDER

ANDREW P. RODOVICH, United States Magistrate.

This matter is before the Court on a Motion for Order Compelling Discovery filed by the plaintiff, Elliott C. Cunningham, on January 23, 1989. For the reasons set forth below, the Motion is GRANTED.

*Background*

Effective August 26, 1985, Cunningham was employed by the Southlake Center for Mental Health, Inc., as a counselor and was assigned to the Lake County Jail to work with jail inmates pursuant to a contract between Southlake and Lake County, Indiana. By memorandum dated June 16, 1986, from Steven J. Dopson, Cunningham's supervisor, Cunningham was asked to resign, and by a second memorandum also dated June 16, 1986, from Dopson, Cunningham was notified that "effective immediately your employment with Southlake Center for Mental Health is being terminated." The memorandum indicated that the "reason for your termination at this time is your requesting, accepting, and consuming food from the food carts intended for the inmates."

On June 25, 1987, Cunningham filed a Complaint against Southlake, Lee C. Strawhun, President of Southlake, Lake County, and Jeff Miller, Warden of the Lake County Jail, alleging that he was terminated in retaliation for raising questions and seeking an investigation into allegations that Paula Cooper, an inmate at the Lake County Jail, had sexual relations with employees of the Lake County Jail and Southlake. On September 7, 1987, the deposition of Dopson was taken. During the deposition, Dopson refused to answer several questions regarding his conversations with Paula Cooper claiming a privilege as to the content and the nature of these conversations.

*Discussion*

Cunningham contends that Dopson is not a certified psychologist and is not authorized to practice medicine; that pursuant to Federal Rule of Evidence 501 and Indiana Code § 25–33–1–17, Dopson may not claim a privilege based on a psychotherapist-patient relationship; and that Dopson should be required to answer the deposition questions relating to Paula Cooper.

Southlake contends that Dopson was a counseller at Southlake; that he attended daily meetings with the psychiatrists and psychologists; that Cooper's case was discussed at these meetings; that Dopson's notes are integrated with notes made by the psychologists and psychiatrists; that it would be impossible to extricate Dopson's notes; and that Cunningham is attempting to gain access to the records of Southlake in violation of Indiana Code § 16–14–1.6–1.

Federal Rule of Evidence 501 provides that:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Cunningham's Section 1983 claims are based on federal question jurisdiction, and Rule 501 mandates that the federal common law of privilege govern these claims. *Potts v. Allis Chalmers Corp.*, 118 F.R.D. 597, 602 (N.D.Ind.1987). In contrast, Cunningham's pendent claims for wrongful dis-

charge and intentional infliction of emotional distress are governed by Indiana law, and Rule 501 requires the application of the state law of privilege.

Federal Rule of Evidence 504 as originally proposed by the Judicial Conference Advisory Committee on Rules of Evidence and as approved by the United States Supreme Court specifically recognized a psychotherapist-patient privilege:

(a) Definitions.

(1) A "patient" is a person who consults or is examined or interviewed by a psychotherapist.

(2) A "psychotherapist" is (A) a person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, while engaged in the diagnosis or treatment of a mental or emotional condition, including drug addiction, or (B) a person licensed or certified as a psychologist under the laws of any state or nation, while similarly engaged.

(3) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the psychotherapist, including members of the patient's family.

(b) General rule of privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his mental or emotional condition, including drug addiction, among himself, his psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

(c) Who may claim the privilege. The privilege may be claimed by the patient, by his guardian or conservator, or by the personal representative of a deceased patient. The person who was the psychotherapist may claim the privilege but only on behalf of the patient. His authority so to do is presumed in the absence of evidence to the contrary.

(d) Exceptions.

(1) *Proceedings for hospitalization.* There is no privilege under this rule for communications relevant to an issue in proceedings to hospitalize the patient for mental illness, if the psychotherapist in the course of diagnosis or treatment had determined that the patient is in need of hospitalization.

(2) *Examination by order of judge.* If the judge orders an examination of the mental or emotional condition of the patient, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise.

(3) *Condition an element of claim or defense.* There is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

Although proposed Rule 504 was not adopted by Congress, this does not mean that Congress intended to foreclose any claims of a psychotherapist-patient privilege. Congressional intent surrounding the enactment of Rule 501 in lieu of proposed Rule 504 was premised on the recognition that "a privilege based on a confidential relationship and other privileges should be determined on a case-by-case basis." *Ryan v. C.I.R.*, 568 F.2d 531, 543 (7th Cir. 1977) *quoting* 1974 U.S.Code Cong. & Admin.News, pp. 7051, 7059. In evaluating a claim of privilege, the Supreme Court has cautioned that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." (footnote omitted) *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974). Cunningham's need for the information must be weighed

against both the importance of the confidential relationship sought to be preserved by the assertion of the privilege and the likelihood that a recognition of the privilege will in fact preserve confidentiality. *Ryan,* 568 F.2d at 543.

It is obvious that the information sought is essential to Cunningham's claim of retaliation. Cunningham will attempt to establish at trial that his supervisor, Dopson, and others responsible for the decision to terminate his employment, were aware of the allegations of Cooper's sexual relationships with Southlake and jail personnel prior to June 16, 1986. Specifically, Cunningham asserts that he reported these allegations to Dopson and to others at staff meetings as early as January, 1986. Clearly, the information is relevant or reasonably calculated to lead to relevant information concerning the motive for his termination.

The rationale underlying the psychotherapist-patient privilege is that a patient must have complete confidence in a psychotherapist to ensure effective therapy. The psychotherapist-patient relationship has been compared to that of the lawyer-client or the priest-penitent. *In re Zuniga,* 714 F.2d 632, 638 (6th Cir.1983). Because a threat to secrecy would block successful treatment, the need for such a privilege is evident.

In the only Seventh Circuit decision discussing the privilege, the Court did not determine the existence or the extent of the privilege because it found that any privilege had been waived. *In re Pebsworth,* 705 F.2d 261, 262 (7th Cir.1983). However, the Court stated:

> While we might well have decided differently if the information sought under the subpoena involved detailed psychological profiles of patients or substantive accounts of therapy sessions, it cannot be said that the subsequent disclosure of such fragmentary data as is involved here as part of the insurance company's legal duties in assisting a federal criminal investigation would be beyond the contemplation of the patients' waiver.

*In re Pebsworth,* 705 F.2d at 263.

■ It appears clear that the Seventh Circuit would recognize a psychotherapist-patient privilege in the present case because the information sought regarding Cooper's sessions with Dopson and her alleged revelations to Dopson involve "substantive accounts of therapy sessions." However, proposed Rule 504 strictly defines a psychotherapist as either a medical doctor or a licensed or certified psychologist. Dopson is neither. He has a masters degree in social work and his title is Crisis Intervention Specialist. (Motion for Order Compelling Discovery, Deposition of Steven J. Dopson, p. 3) The psychotherapist-patient privilege should not be extended beyond the parameters of proposed Rule 504 to social workers such as Dopson.

■ However, Dopson argues that although he had primary responsibility for day-to-day counseling sessions with Cooper, he also attended daily meetings with Southlake psychologists and psychiatrists and discussed Cooper's case with them. Proposed Rule 504(3) defines a confidential communication as one

> not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination or interview, or persons reasonably necessary for the transmission of the communication, or *persons who are participating in the diagnosis and treatment under the direction of the psychotherapist,* including members of the patient's family. (Emphasis added)

There appear to be no federal circuit court decisions discussing this issue. However, Weinstein has explained:

> If, for example, the psychiatrist works closely with a social worker who takes part of a patient's history it should not matter whether the psychotherapist is present since the patient should treat the social worker with the same trust. Similarly, if a paraprofessional is working under *close* supervision and control of a professional he should be covered. In contrast, paraprofessionals who are left virtually unsupervised or family members who talk to the patient after seeing

the therapist are probably not considered by the patient as psychotherapists and they should not be included in the privilege. (emphasis in original)

J. Weinstein and M. Berger, *Weinstein's Evidence,* Section 504[05]

The burden rests with Southlake, the party claiming the privilege, "to present the underlying facts demonstrating the privilege's existence." *Anderson v. Torrington Co.,* 120 F.R.D. 82, 85 (N.D.Ind. 1987). *See also United States v. Tratner,* 511 F.2d 248, 251–52 (7th Cir.1975); and *Hamed v. General Accident Insurance Co.,* 112 F.R.D. 213, 215 (N.D.Ind.1986). The facts presented by Southlake do establish some supervision by psychotherapists and psychologists but not the required close supervision or control over Dopson's treatment of Cooper. Thus, Southlake has not met its burden, and the privilege claims fail under federal law.

■ Indiana Code § 25–33–1–17 provides a psychotherapist-patient privilege similar to the federal privilege:

A psychologist certified under this article may not disclose any information acquired from persons with whom the psychologist has dealt in a professional capacity, except under the following circumstances:

(1) Trials for homicide when the disclosure relates directly to the fact or immediate circumstances of said homicide.

(2) Proceedings the purpose of which is to determine mental competency, or in which a defense of mental incompetency is raised.

(3) Actions, civil or criminal, against a psychologist for malpractice.

(4) Upon an issue as to the validity of a document such as a will of a client.

(5) If the psychologist has the expressed consent of the client or subject, or in the case of a client's death or disability the express consent of the client's legal representative.

(6) Circumstances under which privileged communication is abrogated under the laws of Indiana.

The psychotherapist-patient privilege has been strictly limited in Indiana to persons holding a doctoral degree in psychology or its equivalent. *See* Indiana Code § 25–33–1–5.1. Indiana also recognizes a school counselor-student privilege. *See* Indiana Code § 20–6.1–6–15. However, Indiana recognizes few evidentiary privileges and has specifically denied a privilege to caseworkers at juvenile shelters. *Matter of L.J.M.,* 473 N.E.2d 637, 642 (Ind.App. 1985). As such, Dopson is not entitled to claim a privilege under the laws of Indiana.

Pursuant to Indiana Code § 16–14–1.6–8, Southlake may not produce Cooper's record of treatment without her consent:

(a) A record for each patient or client shall be maintained by the service provider. The record shall contain such information as the department may require by rule. The service provider is the owner of the record, is responsible for its safekeeping, and is entitled to retain possession of it. The information contained in the record belongs to the patient or client involved as well as to the service provider.

(b) All information obtained and maintained in the course of providing services to a patient or client is confidential and shall be disclosed only with the consent of the patient or client ...

Thus, Cunningham will not be entitled to a copy of Cooper's record of treatment. However, Dopson must answer questions regarding whether Cooper made statements to him about sexual activities between Cooper and Southlake and jail personnel and the dates of these conversations. Dopson also must answer questions concerning any reports made by Cunningham to him about Cooper's alleged sexual activities with Southlake and jail personnel and the dates of these conversations. Dopson will not be required to elaborate upon the extent or details of these alleged sexual activities as communicated by Cooper and Cunningham to Dopson.

Based on the foregoing, the Motion for Order Compelling Discovery, filed by the plaintiff on January 23, 1989, is GRANT-

ED. The defendant, Southlake Center for Mental Health, Inc., is ORDERED to produce Steven J. Dopson, for a deposition on or before May 23, 1989, to answer questions regarding conversations which he had with Paula Cooper and the plaintiff concerning Cooper's alleged sexual activities with Southlake and jail personnel and the dates of these alleged conversations.