**In re The AUGUST, 1993 REGULAR GRAND JURY. (Medical Corporation Subpoena II).**

**Misc. No. 93–63.**
**Grand Jury Subpoena No. KMS–41–02.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Nov. 24, 1993.

1394

Richard L. Darst, Mantel Cohen Garelick, Reiswerg & Fishmann, Indianapolis, IN, for the Subpoenaed Medical Corp.

Kathleen M. Sweeney, Asst. U.S. Atty., Indianapolis, IN, for the Government.

### Entry Denying Motion to Quash, Denying Motion for Protective Order & Modifying Subpoena

TINDER, District Judge.

The [Corporation][1] pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, has moved to quash a grand jury subpoena, No. KMS–41–02, ordering the Corporation to produce various records of both a financial and treatment nature. Alternatively, the Corporation requests the court to issue a protective order preventing disclosure of certain patient records. For the reasons dis-

1. To preserve both the secrecy of the grand jury investigation and the privacy of those being investigated by the grand jury, all names, titles, or references in this entry which might in any manner identify those subject to investigation have been replaced with non-identifying, generic terms. Each substitution in the original text, made for the purposes of publication, is contained within brackets ([ ]).

cussed below, the motion to quash will be essentially denied.

## I. *Psychotherapist–Patient Privilege*

 The Corporation challenges Request No. 1 of the subpoena, which seeks:

Any and all records in connection with submission of claims for reimbursement that were filed with Medicaid, Medicare, CHAMPUS, Blue Cross Blue Shield, Delco–Remy, Chrysler Corporation and/or other private insurance carriers records for inpatient or outpatient services for the time period of January 1, 1989, through March 31, 1993, submitted by [the Corporation], *including, but not limited to, patient files and notes*, billing information and supporting documentation for the rendered services.

Subpoena Attachment at ¶ 1 (emphasis added). Patient files and notes, argues the Corporation, are protected from production by the psychotherapist-patient privilege, a privilege which this court ought to recognize pursuant to Federal Rule of Evidence 501. In opposition, the Government correctly notes that the Seventh Circuit has yet to recognize the validity of this privilege, and further argues that sound policy reasons counsel against recognition by this court.[2] The analytical starting point in resolving this question is Rule 501:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness [or] person ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

Fed.R.Evid. 501. Under Rule 501, federal law controls the existence of privileges unless, but not the situation in this criminal case, some state law serves as the rule of decision. *Id.; In re Pebsworth,* 705 F.2d 261, 262 (7th Cir.1983). But the privilege law of the state in which a case arises, Indiana in this instance, should not be completely ignored, because "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Memorial Hosp. v. Shadur,* 664 F.2d 1058, 1061 (7th Cir.1981) (quoting *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976)). And, Indiana does recognize a psychotherapist-patient privilege: "A psychologist licensed under this article may not disclose any information acquired from persons with whom the psychologist has dealt in a professional capacity...." Ind. Code § 25–33–1–17 (Burns Supp.1993).[3] Ex-

2. Additionally, the Government argues that the court cannot apply a psychotherapist-patient privilege in this instance because the only protection afforded the subpoenaed records is that provided by 42 U.S.C.A. § 290dd–2 (Supp.1993), which prohibits the disclosure of "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse...." *Id.* § 290dd–2(a). And, because the Government secured disclosure of these records pursuant to the statutory exception to this confidentiality requirement, *id.* § 290dd–2(b)(2)(C), no common-law evidentiary privilege is applicable. However, there is no basis to assume that Congress, by enacting these provisions, intended to repeal a court's authority, under Federal Rule of Evidence 501, to create and apply evidentiary privileges in these situations. In fact, given that the "express purpose of this provision is to encourage patients to seek treatment for substance abuse without fear that by so doing, their privacy will be compromised," *United States v. Cresta,* 825 F.2d 538, 552 (1st Cir.1987), *cert. denied,* 486 U.S. 1042, 108 S.Ct.

2033, 100 L.Ed.2d 618 (1988), indicating that the goals of the statute and the psychotherapist-patient privilege are identical, both methods of record protection can co-exist in harmony. Moreover, any belief that the order which authorized the disclosure of these records contains any irregularities is unfounded. Magistrate Judge Godich, in ordering disclosure, complied faithfully with all statutory and regulatory requirements. *See* 42 C.F.R. § 2.61–2.65. Thus, the matter of this statute is irrelevant to the court's consideration of the psychotherapist-patient privilege.

3. A number of exceptions to this privilege are also contained in the statute, none of which the Government argues is applicable to this case: (1) Trials for homicide when the disclosure relates directly to the fact or immediate circumstances of said homicide; (2) Proceedings the purpose of which is to determine mental competency, or in which a defense of mental incompetency is raised; (3) Actions, civil or criminal, against a psychologist for malpractice; (4) Upon an issue as to the validity of a document such as a will of

istence of this privilege under Indiana law supports, but does not control, the existence of the privilege under federal law and the court must instead independently analyze the Corporation's claim of privilege. *Pebsworth,* 705 F.2d at 262.

■ Although adopted by the Supreme Court, Congress refused to enact into law Proposed Federal Rule of Evidence 504 which contained a psychotherapist-patient privilege. Even as an unenacted rule, the content of this privilege is an excellent guide to developing the contours of any privilege that might exist in this case:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his mental or emotional condition, including drug addition, among himself, his psychotherapist, or person who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

Proposed Fed.R.Evid. 504. However, because Congress did not enact the rule, no inference regarding the validity of this privilege ought to be gleaned from this proposed rule. In fact, in evaluating a claim of privilege under Rule 501, the Supreme Court has warned that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108–09, 41 L.Ed.2d 1039 (1974) (footnote omitted); *see also Ryan v. Commissioner of Internal Revenue,* 568 F.2d 531, 542–43 (7th Cir.), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978); *United States v. Wimberly,* No. 91–CR–0414, 1993 WL 39667, at *2 (N.D.Ill. Feb. 12, 1993) (refusing to recognize psychotherapist-patient privilege based on *Nixon* rule). Nonetheless, Congress' failure to enact specific privileges was not meant to inhibit courts from developing and recognizing specific privileges to protect important relationships: "Congress manifested an affirmative inten-

tion not to freeze the law of privilege. Its purpose rather was to provide the courts with the flexibility to develop rules of privilege on a case-by-case basis, and to leave the door open to change." *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 911, 63 L.Ed.2d 186 (1980).

■ The Seventh Circuit, while refraining from recognizing a psychotherapist-patient privilege, *see Pebsworth,* 705 F.2d at 262–63, has provided a general principle to guide inquiries under Rule 501:

> In deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case."

*Shadur,* 664 F.2d at 1061–62 (quoting *Ryan,* 568 F.2d at 543). And, in considering the need for truth, the court has stated:

> The federal government has a strong interest in enforcing federal criminal statutes, which implies strong policy favoring admissibility of relevant evidence in criminal cases. Related to this is the federal court's general interest in preserving the accuracy of the fact-finding process. Because evidentiary privileges impede the fact-finding function by excluding relevant evidence, federal courts generally disfavor privileges and construe them narrowly.

*United States v. Wilson,* 960 F.2d 48, 50 (7th Cir.), *cert. denied,* ─── U.S. ───, 113 S.Ct. 275, 121 L.Ed.2d 202 (1992). Applying these ideas to the present case, the court first notes that the Grand Jury's investigation concerns possible "wire and mail fraud, money laundering, and various violations of medicare and medicaid statutes...." Govt's Opp'n to Mot. to Quash at 1. Comparing the purpose of the investigation to the scope of Request No. 1, which includes all "patient files and notes," it seems evident that de-

---

a client; (5) If the psychologist has the express consent of the client or subject, or in the case of a client's death or disability, the express consent of the client's legal representative; (6) Circumstances under which privileged communication is abrogated under the laws of Indiana. *Id.*

tailed patient histories and notes of counseling sessions which reflect confidential communications between the psychotherapist and patient are not necessarily relevant to the possible criminal conduct. Rather, the genre of arguably protected matters, which include intimate communications made for the purposes of diagnosis or treatment of a mental or emotional condition, would not be of great moment to the Grand Jury's investigation. *Cf. Fittanto v. Children's Advocacy Center*, No. 91–C–6934, 1992 WL 350710, at *3 (N.D.Ill. Nov. 23, 1992) (refusing to apply privilege because "need for truth" great when sought information directly relevant to matter at issue).[4] Although the need for accurate truth-finding is always a great interest of judicial administration, *Wilson*, 960 F.2d at 50, nothing indicates that protection of communications between patient and psychotherapist will necessarily impede that interest under the particular circumstances of the grand jury's investigation. Thus, the Grand Jury's "need for truth," relative to the psychotherapist-patient dialogue requested by the subpoena, is minimal.

Next, balanced against this minimal need for patient disclosures, is the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in this case. *Ryan*, 568 F.2d at 543. Underlying the psychotherapist-patient privilege is the policy that "[u]nlike the patient with physical complaints who will consult a physician regardless of whether confidentiality is guaranteed, a neurotic or psychotic individual may seek help only if he is assured that his confidences will not be divulged, even in a courtroom," 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 504[03] (1993), and "[i]t would be too much to expect them to do so if they knew that all they say—and all that the

psychiatrist learns from what they say—may be revealed to the whole world from the witness stand." *Taylor v. United States*, 222 F.2d 398, 401 (D.C.Cir.1955). *See also Advisory Comm's. Notes to Proposed Fed.R.Evid. 504*, 56 F.R.D. 183, 242 (1973). The psychotherapist-patient relationship thus relies, for its effectiveness, on a certain confidentiality of communication. *Jennings v. D.H.L. Airlines*, 101 F.R.D. 549, 550–51 (N.D.Ill.1984). "Because a threat to secrecy would block successful treatment, the need for such a privilege is evident." *Cunningham v. Southlake Center for Mental Health*, 125 F.R.D. 474, 477 (N.D.Ind.1989). From these thoughts it ought to be concluded that the confidential nature of the conversations is the essence of diagnosis and treatment of many psychological and emotional problems. Moreover, applying the privilege to this case would prevent the disclosure of a narrow segment of the psychotherapist's records—those confidential communications made for the purposes of diagnosis and treatment. Thus, this is not a situation where the Grand Jury thinks the psychotherapist-patient relationship is itself potentially criminal in nature; nor is this the case where the communications between the patient and psychotherapist are purportedly criminal. Instead, the Grand Jury is investigating the financial activities of the physician—activities detached from the confidential communications between patient and doctor. Thus, not only is the relationship at stake important, but application of the privilege in this case would protect its continued viability. The costs of recognizing the psychotherapist-patient privilege do not, in this case, outweigh the benefits derived from protecting this confidential medical relationship. Further buttressing recognition of the privilege in this case is the fact, observed above, that Indiana recognizes a similar protection. And, "where a state holds out the expectation of protection to its

---

4. This exploration of the relationship between the arguably privileged materials and the Grand Jury investigation should not be confused with the discussion in Part II of this entry regarding "relevancy" for purposes of Federal Rule of Criminal Procedure 17. Here, the question is the Grand Jury's need for the possibly privileged materials—the answer to which depends, in part, on the *degree* of relevance of the evidence to the scope of the Grand Jury's investigation. In Part

II, the discussion concerns "relevancy" of subpoenaed materials as it relates to defining the limits of the Grand Jury's investigative power. Although materials may be amply relevant to a Grand Jury investigation to ward off a motion to quash the subpoena, the same materials may be sufficiently attenuated from that investigation (but still relevant) to merit less weight in the balance required in determining the availability of an evidentiary privilege.

citizens, they should not be disappointed by a mechanical and unnecessary application of the federal rule." *Shadur,* 664 F.2d at 1061 (quoting *Lora v. Board of Educ.,* 74 F.R.D. 565 (E.D.N.Y.1977)). Additionally, this result is entirely consistent with the Seventh Circuit's only statement regarding this privilege, where the court, in avoiding the question of the existence of the privilege, stated "we might well have decided differently if the information sought under the subpoena involved detailed psychological profiles of patients or substantive accounts of therapy sessions...." *Pebsworth,* 705 F.2d at 263. Because the subpoena in this case seeks files which may contain the very type of information which *Pebsworth* thought worthy of protection, it seems likely that the Seventh Circuit would recognize the psychotherapist-patient privilege under these circumstances. *See Cunningham,* 125 F.R.D. at 477.

■ In an attempt to dissuade the court from recognizing a privilege in this case, the Government cites three cases, each of which is easily distinguishable. First, each case specifically considered existence of the physician-patient privilege, not the psychotherapist-patient privilege. *See Hancock v. Dodson,* 958 F.2d 1367, 1373 (6th Cir.1992); *United States v. Bercier,* 848 F.2d 917, 920 (8th Cir.1988); *In re Grand Jury Proceedings,* 801 F.2d 1164, 1169 (9th Cir.1986). Specifically, these cases rested their decision not to recognize the physician-patient privilege on the mere fact that such a privilege was not recognized at common law. This reasoning is inconsistent with the Supreme Court's interpretation of Rule 501, which emphasizes the "flexible" nature of privilege development in the federal courts and the need for case-by-case development of the law of privilege—not the mechanical freezing of privilege as it existed at the common law. *See Trammel,* 445 U.S. at 47, 100 S.Ct. at 910–11; *United States v. Gillock,* 445 U.S. 360, 367, 100 S.Ct. 1185, 1190–91, 63 L.Ed.2d 454 (1980); *In re Grand Jury Subpoena,* 710 F.Supp. 999, 1004 (D.N.J.1989). Moreover, even recognizing the analogous quality of decisions regarding the physician-patient

privilege, these cases are suspect inasmuch as they either are confined to the specific facts of the decided case, *In re Grand Jury Proceedings,* 801 F.2d at 1169 ("[Doe] asserts that the government's need for the records is outweighed by the policies underlying the state-created privilege. We disagree."), or they are broad, blanket holdings that lack any specific relationship to the facts presented in each case. *Hancock,* 958 F.2d at 1373 ("[F]ederal courts do not recognize a federal physician-patient privilege...."); *Bercier,* 848 F.2d at 920 ("[F]ederal courts do not recognize the physician-patient privilege in federal criminal proceedings."). From either perspective, the decisions contravene precedent in this circuit which requires the development of privileges on a case-by-case basis, considering the costs and benefits of applying the privilege in each instance. *Shadur,* 664 F.2d at 1061–62 (quoting *Ryan,* 568 F.2d at 543). Because none of these cases are factually similar to the present issue, they do not control the decision. *See Hancock,* 958 F.2d at 1372–73 (considering testimony of treating physician when patient consented to disclosure); *Bercier,* 848 F.2d at 920 (considering statements made by defendant to treating physician outside scope of any privilege); *In re Grand Jury Proceedings,* 801 F.2d 1164 (considering subpoena of records directly related to grand jury investigation). Accordingly, the psychotherapist-patient privilege may be claimed by the Corporation for purposes of the presently disputed subpoena.

■ Mindful that evidentiary privileges must be "strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally prudent principle of utilizing all rationale means for ascertaining the truth," *Trammel,* 445 U.S. at 50, 100 S.Ct. at 912, application of the privilege in this case must proceed deliberately. Though not of direct legal authority, Proposed Federal Rule of Evidence 504 is a helpful guide to the application of the psychotherapist-patient privilege in this case.[5] However, the Corporation may not make a blanket assertion that the

---

5. For the benefit of the parties, the full text of Proposed Rule 504, as applicable to this case, provides:

(a) **Definitions.**

privilege applies to all documents; instead, the Corporation must assert and justify application of the privilege to each specific document or other evidence it believes is protected from disclosure. *Matter of Klein,* 776 F.2d 628, 634 (7th Cir.1985); *In re Walsh,* 623 F.2d 489, 493 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). Thus, although deciding that the psychotherapist-patient privilege exists, and applies, to this case, exacting application of the privilege to specific materials is left for later decision. It is expected that the Grand Jury, the Government, and the Corporation's attorney will, in good faith, apply today's decision to the materials and that few, if any, disputes will arise requiring this court to intervene.

## II. *Relevancy of Subpoenaed Materials & Claim of Unreasonableness/Oppressiveness*

■ Next, the Corporation argues that many of the subpoenaed documents are not relevant to the Grand Jury's investigation and that the subpoena is, in general, unreasonable and oppressive. The starting point of this analysis is Federal Rule of Criminal Procedure 17(c), which provides:

A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. *The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.*

Fed.R.Crim.P. 17(c) (emphasis added). Recently, in *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 299–02, 111 S.Ct. 722, 727–28, 112 L.Ed.2d 795 (1991), the Supreme Court gave content to the otherwise vague use of the term "unreasonable" in Rule 17.[6] In that decision, the Court held that a grand jury subpoena was reasonable so long as it sought "information relevant to the grand jury's investigation...." *Id.* 498 U.S. at 302,

(1) A "patient" is a person who consults or is examined or interviewed by a psychotherapist. (2) A "psychotherapist" is (A) a person authorized to practice medicine in any state or nation, or reasonably believed by the patient so to be, while engaged in the diagnosis or treatment of a mental or emotional condition, including drug addiction, or (B) a person licensed or certified as a psychologist under the laws of any state or nation, while similarly engaged. (3) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the psychotherapist, including members of the patient's family.

(b) **General rule of privilege.** A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications, made for the purposes of diagnosis or treatment of his mental or emotional condition, including drug addiction, among himself, his psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist, including members of the patient's family.

(c) **Who may claim the privilege.** The privilege may be claimed by the patient, by his guardian or conservator, or by the personal representative of a deceased patient. The person who was the psychotherapist may claim the privilege but only on behalf of the patient. His authority so to do is presumed in the absence of evidence to the contrary.

(d) **Exceptions.**

(1) **Proceedings for hospitalization.** There is no privilege under this rule for communications relevant to an issue in proceedings to hospitalize the patient for mental illness, if the psychotherapist in the course of diagnosis or treatment has determined that the patient is in need of hospitalization.

(2) **Examination by order of judge.** If the judge orders an examination of the mental or emotional condition of the patient, communications made in the course thereof are not privileged under this rule with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise.

(3) **Condition an element of claim or defense.** There is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense, or after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

6. Not before the Court was the meaning of the term "oppressive" as used in the rule. *See Id.* 498 U.S. at 301, 111 S.Ct. at 728 ("Respondents did not challenge the subpoenas as being too indefinite nor did they claim that compliance would be overly burdensome.").

111 S.Ct. at 729. Rather than offering a more indefinite balancing test, the Court defined "reasonableness" solely in terms of relevancy.[7] Claims of irrelevancy, such as that made by the Corporation here, are accordingly considered in light of the unreasonableness component of Rule 17(c). Because the only other reason justifying a court in quashing a subpoena is oppressiveness, the entirety of the Corporation's argument must be analyzed under the penumbra of Rule 17(c). But before proceeding to look at the specific challenges to the subpoena, the broad power of the Grand Jury ought to be recognized:

> The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush.

*R. Enterprises, Inc.*, 498 U.S. at 297, 111 S.Ct. at 726. And in conducting its investigation, the grand jury "may compel the production of evidence or testimony of witnesses as it considers appropriate." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974)). Most importantly, "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority," and "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *Id.* 498 U.S. at 301, 111 S.Ct. at 728. Under *R. Enterprises, Inc.*, the sole question is whether the Corporation has met this burden.

## A. *Relevancy (i.e. Unreasonableness)*

■ The Corporation argues that the subpoena issued by the Grand Jury is so broad, and untailored to this specific investigation, that many of the requested records have no bearing on the investigation. *R. Enterprises, Inc.* established the applicable test when a subpoena is challenged on relevancy grounds: "[T]he motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *R. Enterprises, Inc.*, 498 U.S. at 301, 111 S.Ct. at 728. Clearly, this standard is quite broad, giving extensive, but not unlimited investigatory power to the Grand Jury. *Id.* 498 U.S. at 298–300, 111 S.Ct. at 727. In wielding this power, the grand jury is "not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." *Id.* So, provided the information sought in a subpoena has reasonable possibility of producing information related to the subject matter of the grand jury's investigation, the subpoena is not unreasonable. In other words, is there a logical connection between the subpoenaed documents and the charges that constitute the subject matter of the grand jury investigation. *See, e.g., In re Faltico*, 561 F.2d 109, 111 (8th Cir.1977); *In re September 1975 Grand Jury Term*, 532 F.2d 734, 738 (10th Cir.1976).

■ Helpful, if not necessary, to this analysis is the Government's decision to reveal the general subject matter of the Grand Jury's investigation. Namely, the Grand Jury is investigating possible "wire and mail fraud, money laundering, and various viola-

---

7. To this extent, the decision in *In re PHE, Inc.*, 790 F.Supp. 1310 (W.D.Ky.1992), appears to be an incorrect interpretation of the Court's decision. In *In re PHE*, the court construed the language of *R. Enterprises, Inc.* as adopting a balancing test to determine if a subpoena is unreasonable: "In determining whether there has been a showing of 'unreasonableness' adequate to overcome the presumption, 'the difficult position of subpoena recipients' must be balanced against 'the strong governmental interests in affording grand juries wide latitude, avoiding minitrials on peripheral matters, and preserving a necessary level of secrecy.'" *In re PHE, Inc.*, 790 F.Supp. at 1313 (quoting *R. Enterprises, Inc.*, 498 U.S. at 300, 111 S.Ct. at 728). In so interpreting, the *R. Enterprises, Inc.* language was clearly taken out of its intended context—as demonstrating the premises of the Court's subsequent rule—and used instead to expand the lower court's discretion under Rule 17. What the *In re PHE* court actually did was adopt Justice Stevens concurring opinion in *R. Enterprises, Inc.*, wherein he explicitly advocates reliance on such a balancing test. *R. Enterprises, Inc.*, 498 U.S. at 303–04, 111 S.Ct. at 729–30 (Stevens, J., concurring). This court squarely rejects such an expansive interpretation.

tions of medicare and medicaid statutes among other things in connection with" the Corporation. Govt's Opp'n to Mot. to Quash at 1. In arguing irrelevancy, the Corporation asserts that the subpoena is "not tailored to this particular investigation or to this particular witness," Mot. to Quash at 3, and, specifically, that certain requested airplane, real estate and vehicle records are unrelated to the investigation. Clearly this is not so. Records of this type have a "reasonable possibility" of producing information regarding the Corporation's financial transactions and activities—undeniably related to the Grand Jury's investigation of money laundering, wire and mail fraud. Remembering that the party seeking to quash a subpoena bears the burden of demonstrating irrelevancy, *R. Enterprises, Inc.,* 498 U.S. at 300–02, 111 S.Ct. at 728, the Corporation's argument must fail.

## B. *Oppressiveness*

 Rule 17(c) also authorizes the quashing of grand jury subpoena if the party to which the subpoena is directed demonstrates that compliance with the subpoena would be "oppressive." Fed.R.Crim.P. 17(c). Based on this standard, the Corporation offers a number of reasons why the subpoena should be quashed. Corporation first argues that the subpoena is oppressive because it requests virtually every business record over a four and one-half year time frame. However, the Government has conceded to limit the scope of the record request to a three-year span between 1990 and 1993. Govt's Opp'n to Mot. to Quash at 5. Generally, a subpoena may require production of records covering a "reasonable period of time." *United States v. Alewelt,* 532 F.2d 1165 (7th Cir.), *cert. denied,* 429 U.S. 840, 97 S.Ct. 114, 50 L.Ed.2d 109 (1976) (applying general "reasonableness" standard to govern grand jury subpoenas). Of course, what is "reasonable" depends on the circumstances of the particular investigation, *R. Enterprises,* 498 U.S. at 298–300, 111 S.Ct. at 727; *In re Grand Jury Investigation,* 459 F.Supp. 1335, 1343 (E.D.Pa.1978), and the court presumes that the subpoena is valid absent a sufficient showing by the movant party to override this presumption. *Id.* 498 U.S. at 300–02, 111 S.Ct. at 728. And, the Corporation has failed

to sustain its burden; three years of corporate records, even assuming every record of the corporation is subpoenaed (and these records are relevant to the investigation), is not unreasonable in light of the subjects of investigation—wire and mail fraud, money laundering, and medicare and medicaid fraud. *See In re PHE, Inc.,* 790 F.Supp. at 1314 (upholding subpoena for six years of records in investigation for violation of obscenity statutes); *In re Subpoena to Testify Before Grand Jury,* 630 F.Supp. 235, 236 (N.D.Ind. 1986) (upholding subpoena for four years of corporate records); *In re Grand Jury Investigation,* 459 F.Supp. at 1343 (upholding subpoena for six years of records in investigation of corporation for embezzlement and illegal financial activities). Additionally, noteworthy is the fact that the subpoena does indicate the requested documents with sufficient particularity to survive scrutiny. As indicated above, a subpoena must identify the requested records "with reasonable particularity." *Alewelt,* 532 F.2d at 1168. If nothing else, this four page, forty paragraph subpoena teems with particularity and specificity. While subpoenas which vaguely request "all corporate records" or the like have been held invalid, *In re Subpoena to Testify before the Grand Jury,* 630 F.Supp. at 237, the present subpoena, although it may effectively seek all corporate records, is specific in its requests and is not oppressive for purposes of Rule 17(c).

 Corporation also urges, equally unsuccessfully, that the subpoena is oppressive in regards to the amount of information which it requires. Although in some contexts subpoenas have been quashed because they request an excessive amount of information, *e.g., In re Grand Jury Investigation,* 746 F.Supp. 866, 867 (E.D.Wis.1990) (quashing subpoena requesting 9,000 linear feet of documents), the party opposing the subpoena must quantify the volume of information requested and show that the amount is unreasonable. *E.g., Id.; In re PHE, Inc.,* 790 F.Supp. at 1314. Nothing is offered by the Corporation to substantiate its bald assertion of the subpoena's excessiveness except a statement complaining that the subpoena requires virtually every record of the Corpora-

tion. This, without more, is insufficient to prove oppressiveness under Rule 17(c) and to overcome the strong presumption of validity which surrounds grand jury subpoenas. Corporation also argues that because the subpoena requires the original records, rather than copies, production will essentially prevent the Corporation from continued functioning. Granted, the subpoena does request mostly original documents; and, absent a contrary showing, the court presumes the grand jury has an actual need for the original documents. *See In re Special April 1977 Grand Jury*, 581 F.2d 589 (7th Cir. 1978). However, even if the originals must be produced, the Corporation can make copies for its own use while the originals are absent. Although Corporation asserts that the cost of copying the records is prohibitive, it fails to indicate exactly how much copying would cost in relation to its financial resources. Only if evidence is adduced that copying the records would be wholly financially oppressive to the Corporation might the court even consider such a challenge. *See In re PHE, Inc.*, 790 F.Supp. at 1314. Finally, even if the Corporation is financially unable to copy the records for their own use, loss of access to original records does not effect the validity of this subpoena because "a claim of disruption caused by record production does not preclude compliance with a grand jury subpoena." *In re Special April 1977 Grand Jury*, 581 F.2d at 594. Accordingly, none of the arguments offered by the Corporation convince the court that the subpoena is oppressive.

### III. *Alleged Improprieties regarding Grand Jury Investigation*

 Corporation's last argument can be dealt with rather quickly. It argues that the Grand Jury is being improperly influenced by a woman who is attempting to extort [the psychotherapist], a principal of the Corporation. Specifically, the Corporation refers to a letter in which this woman refers to an investigation of [the Corporation] by a "task force," wherein she states:

I was promised probation if I cooperated. They subpoenaed every piece of paper I had left & still have them. I know exactly what they are looking for but at this point

am disinclined to help them. Also the local newspaper is going to run a story Sept 12 on insurance fraud & may follow it up [with] a story aimed specifically at you if their lawyers think they can avoid libel. *They may wait until the Task Force (isn't it nice to have your own task force) decides to 1) indict 2) go to a Grand Jury 3) do nothing but encourage the insurance companies to go after you in civil court.*

Corp's. Memo in Support of Mot to Quash at Ex. A (unnumbered). The Corporation argues the passage demonstrates the woman is using the Grand Jury to satisfy her private vendetta, believing the statement "isn't it nice to have your own task force" is a reference to the Grand Jury and her ability to control, or influence, its investigation. As an initial matter, there are obvious interpretive difficulties in construing the letter as the Corporation suggests. First, the term "task force" cannot be intended to refer to the Grand Jury when the writer states that the "task force" may go to a grand jury with their investigation. Besides this obvious inconsistency, the statement "isn't it nice to have your own task force" could be, and likely is, intended to refer to the fact that the investigation centers on [the Corporation], meaning that the task force was created by the government to focus on [the Corporation] (although not controlled by him); thus it is *his* "own task force." But, beyond these semantic and interpretive puzzles, even if agreed with the Corporation's interpretation, so what? Already established above is the broad discretion a grand jury has to investigate as it deems necessary to fulfill its duty. *See R. Enterprises*, 498 U.S. at 297–300, 111 S.Ct. at 726–27. Agreed, this discretion is not unbridled, and the grand jury may not "select targets of investigation out of malice or an intent to harass." *Id.* 498 U.S. at 298–300, 111 S.Ct. at 727. However, a court presumes regularity and propriety in grand jury activities, *Id.* 498 U.S. at 300–02, 111 S.Ct. at 728, and must be convinced, with evidence, of impropriety. The letter and arguments offered by the Corporation are a far cry from the type and quality of proof necessary to pierce the grand jury's discretion and to merit interference by the court.

### IV. *Conclusion*

] For the reasons articulated above, the Corporation's Motion to Quash the Grand Jury's Subpoena is hereby **DENIED**. Further, because all records produced to the Grand Jury in compliance with the subpoena are adequately protected by the secrecy requirements imposed on the grand jury under Federal Rule of Criminal Procedure 6(e), the Corporation's alternative Motion for a Protective Order is likewise **DENIED**. However, under Federal Rule of Criminal Procedure 17(c), the court is authorized to modify a subpoena if the subpoena is found to be unreasonable or oppressive. Fed.R.Crim.P. 17(c); *In re Subpoena to Testify before Grand Jury*, 630 F.Supp. at 237. Because the subpoena, if it required the production of privileged material, would be oppressive, the court may utilize Rule 17(c) to make this otherwise oppressive subpoena valid. *In re Subpoena to Testify before Grand Jury*, 630 F.Supp. at 237. In light of the decision above recognizing the existence in this case of a psychotherapist-patient privilege which protects confidential communications between the patient and psychotherapist, the subpoena is hereby **MODIFIED** to prohibit the Grand Jury from requiring the production of any matter which is protected by the privilege as that privilege is defined by the court in this entry. Counsel for the Government and the Corporation are hereby **ORDERED** to confer no later than December 10, 1993 regarding the application of the privilege to specific records and documents. Any disputes which may arise regarding a claim of privilege to specific documents may be brought before this court; however, instead of presenting documents one-by-one to the court for determination of privilege, Counsel for the Corporation is to collect all disputed materials, and present them in a sealed ex parte filing for in camera review by the court, so that the court may consider all issues surrounding the application of this privilege at one time.[8]

ALL OF WHICH IS ORDERED.

---

8. It is conceivable that certain documents may contain some information covered by the privilege and other information not so protected. In that event, the Corporation will be expected to produce the unprotected portion of such a document; if a dispute remains as to the unproduced portion, only the disputed portion need to be submitted to the court. Of course, this process may require use of redacted copies of certain documents rather than the originals requested by the Government. However, reasonable counsel should be able to work out a suitable arrangement for the authentication of the redacted copies. If not, the court stands ready to supervise that process as well.