**STATE of Delaware**

v.

**Rodney A. BRIGHT, Defendant.**

**I.D. No. 9412012391.**

Superior Court of Delaware,
New Castle County.

Submitted: June 4, 1996.
Decided: June 27, 1996.

Rosemary K. Killian, Deputy Attorney General, Wilmington, for State.

Kevin P. O'Neill, Heyden, Kania & O'Neill, Wilmington, for Defendant.

## OPINION

BARRON, Judge.

This case gives the Court its first opportunity to interpret certain federal confidentiality statutes as they apply to a Delaware prosecution. A Delaware grand jury has charged the defendant, Rodney A. Bright ("Bright"), with Attempted Murder in the First Degree in violation of 11 *Del.C.* § 531 and five counts of Terroristic Threatening in violation of 11 *Del.C.* § 621.[1] On March 13, 1996, Bright filed two Motions to Suppress certain evidence relating to statements made by him to medical personnel at an out-of-state Veterans' Administration Hospital.[2] Briefing having been completed, the motions are now ripe for decision.

### I. THE FACTS

Bright is a veteran of the United States Armed Forces. Apparently, Bright suffers from certain psychiatric disorders, to wit: manic depression and bi-polar disorder. Bright has sought treatment for these conditions from Veterans' Administration (hereinafter "V.A.") personnel for the past twenty years at various V.A. facilities throughout the nation. In his motion, Bright claims that he has a history of alcohol dependence. Bright does not specifically state that the V.A. hospital or anyone else has treated him for his alcohol dependence. Rather, Bright simply claims that this history of abuse exists and

that the V.A. hospital treated his psychological disorders with numerous drugs.

At the time of his arrest, Bright was under the care of Dr. Mayetta at the V.A. hospital in Indianapolis, Indiana.[3] Bright asserts that Dr. Mayetta was a treating psychiatrist employed by the V.A. and/or alternatively received monies pursuant to government contract for mental health and psychiatric services rendered to patients at the V.A. hospital. Dr. Mayetta treated Bright for his mental impairments on an outpatient basis for a substantial period of time.[4] The State submits that Dr. Mayetta must have known that Bright had killed his brother in Texas in the mid–1980's and that he was found to be insane at that time. Thus, the doctor would have been cognizant of Bright's dangerous propensities and capacity to harm others.

Doctor Mayetta informed the Delaware police that in December of 1994, during the course of therapy, Bright had repeatedly threatened to harm his ex-wife, Ona Bright, (the "alleged victim"). The alleged victim had concealed her whereabouts from Bright and · was living in Delaware. Although Bright had regularly threatened the alleged victim during the month of December 1994, it was one incident in particular that compelled Dr. Mayetta to alert the authorities as to the danger that Bright posed to the alleged victim's safety.[5]

Dr. Mayetta disclosed Bright's violent intent to two sources in Delaware: the alleged victim and, as stated, the New Castle County

---

1. Delaware law applies to this case since a person may be convicted under the law of this State if either the conduct or the result which is an element of the offense occurs within Delaware. 11 *Del.C.* § 204(a)(1).

2. One motion seeks suppression based on federal law and the Fifth Amendment. The other motion seeks suppression based on a violation of the physician-patient privilege. This decision addresses both motions.

3. It is noted that the affidavit of probable cause attached to the warrant for the arrest of the defendant spells the doctor's name as Dr. "Maeta." The Court has applied the spelling of her name as set forth in the State's submission opposing the defendant's motions.

4. The State bases this information on letters Bright has written to his family since he has been

incarcerated. Also, as already stated, it is not clear from the record whether Dr. Mayetta, or anyone else, treated Bright for alcohol and/or drug abuse.

5. The affidavit of probable cause attached to the warrant for the defendant's arrest states, in part, that the defendant told Dr. Mayetta on December 9, 1994, that he was leaving for Delaware to kill the alleged victim. Dr. Mayetta telephoned Officer Michael Hopkins of the New Castle County Police Department and conveyed this information to him. She also told the officer that the defendant seemed consumed with the idea of killing the alleged victim. Dr. Mayetta told Office Hopkins that the defendant had told her that he had several weapons and that he was either going to shoot the alleged victim or strangle her with his bare hands, killing her. Presumably, it was this information which led Dr. Mayetta to contact the Delaware authorities.

Police.[6] Dr. Mayetta's actions, combined with commendable police work, resulted in the police capturing Bright approximately a mile and a half from the alleged victim's place of work. When the police apprehended Bright, he possessed a knife, and allegedly had recently purchased duct tape and rope while in Delaware.[7]

## II. DISCUSSION

Bright seeks to suppress the threatening statements he made to Dr. Mayetta and all derivative evidence resulting therefrom. Bright bases his Motions to Suppress on three theories. First, Bright claims that Dr. Mayetta acted as an agent for the prosecution when she questioned Bright; thereby, rendering his statements involuntary under the Fifth Amendment. Second, Bright contends that a federal confidentiality statute, 42 U.S.C. § 290dd–2(c), prohibits the use of records relating to substance abuse programs in criminal proceedings. Third, Bright contends that Dr. Mayetta's disclosure of his statements violates the physician-patient privilege. The defendant's contentions will be addressed *seriatim.*

### A. Bright's Statements Do Not Violate the 5th Amendment.

■ The Fifth Amendment provides, in part, that no person shall be deprived of life, liberty, or property, without due process of law.[8] U.S. Const. amend. V. Naturally, the admission of an involuntary confession violates due process. Only those confessions that, under the totality of the circumstances, are the product of rational intellect and free will, and not the product of governmental coercion, are considered voluntary. *United States v. D.F.,* 63 F.3d 671, 679 (7th Cir.1995) (citing *United States v. Montgomery,* 14 F.3d 1189, 1194 (7th Cir.1994)); *Colorado v. Con-*

*nelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 523–24, 93 L.Ed.2d 473 (1986); *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140–41, 89 L.Ed.2d 410 (1986); *Liu v. State,* Del.Supr., 628 A.2d 1376, 1379 (1993); *State v. Rooks,* Del.Supr., 401 A.2d 943, 948–49 (1979) (quoting *Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961)); *Black v. State,* Del.Supr., 616 A.2d 320, 322–23 (1992).

■ Bright claims that Dr. Mayetta's actions violated the Fifth Amendment. Specifically, Bright maintains that Dr. Mayetta contemplated the possibility of criminal prosecution when she elicited the incriminating information from Bright while at the same time believing she had an ethical duty to report the contents of the conversation. Bright claims that these actions constitute coercive governmental action which renders his statements involuntary under the Fifth Amendment.

In support of this claim, Bright cites *United States v. D.F., supra.* In *D.F.,* the district court found that certain employees of the mental health facility actively persuaded an inpatient child suspect to reveal that she had killed her two cousins. The *D.F.* therapists believed that disclosure and punishment would help rehabilitate the patient's mental health. The therapists immediately reported the patient's confession to Protective Services who, in turn, contacted the F.B.I. The district court suppressed the patient's confession since it found that, under these circumstances, the statements were involuntary. The Circuit Court of Appeals affirmed the district court's decision.

■ The State contends, and the Court agrees, that the *D.F.* case is clearly distinguishable from the one presently before the Court. First, Dr. Mayetta was not acting as

---

6. Furthermore, the doctor caused an order to issue in Indianapolis for the defendant to be committed to a psychiatric facility. This order was never effectuated, however, since the defendant left the State of Indiana before compliance could be had.

7. The facts as adduced herein are taken from the submissions of the parties. The Court assumes their correctness. Of course, the facts will be more fully developed at trial.

8. Delaware's constitution embraces a similar notion. "In all criminal prosecutions, the accused ... shall not be compelled to give evidence against himself; nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land." Del. Const. art. I, § 7.

an agent for the prosecution merely because she was employed by a government facility. Although it is clear that one does not have to be a police officer in order to qualify as a state actor for purposes of the Fifth Amendment analysis, it is equally clear that "mere government employment of the questioner, standing alone, does not *necessarily* make one a 'state actor' for this Fifth Amendment purpose." *Id.* at 680–81 (emphasis in original).

 Instead, in order to implicate the Fifth Amendment, the questioner must contemplate the prosecution of the individual when examining said individual. *Id.* 682–83 (citing *Mathis v. United States*, 391 U.S. 1, 4, 88 S.Ct. 1503, 1504–05, 20 L.Ed.2d 381 (1968)). Therefore, a seemingly neutral examination turns into a tool for the prosecution when the caregiver substantially changes his/her role by agreeing, expressly or impliedly, to collaborate in the prosecution of the individual. *D.F.*, 63 F.3d at 683–84; *cf. United States v. A.R.*, 38 F.3d 699 (3d Cir.1994); *United States v. Cortes*, 922 F.2d 123 (2d Cir.1990); *Battie v. Estelle*, 655 F.2d 692, 699 (5th Cir.1981) (discussing the unexpected role-shifting that occurred when a neutral psychiatric interview was used as a tool for the prosecution).[9] Stated differently, the state actor must intend to elicit statements from the patient that will aid in the patient's criminal prosecution. *D.F.*, 63 F.3d at 684; *cf. Jackson v. State*, Del.Supr., 643 A.2d 1360, 1376 (1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 956, 130 L.Ed.2d 898 (1995) (stating that factors to be considered in determining whether informant is an agent of the State are whether there was an agreement between the informant and the police, the content and scope of any such agreement, whether the police provided direction or instructions to the informant, and whether there was prearranged or ongoing cooperation).

Here, unlike the medical personnel in *D.F.*, there is no indication that the purpose of Dr. Mayetta's questioning of Bright was anything other than to treat him for his medical conditions. Nothing in the record suggests that "the prosecution of the defendant being questioned [was] among the purposes, definite or contingent, for which the information [was] elicited." *Id.* at 682–83 (footnote omitted). Nor is there any indication that Dr. Mayetta went "beyond [her] accepted medical role[ ] and affirmatively [took] on the role of delivering someone who is in [her] care and custody to the prosecutor...." *Id.* at 683. Rather, it appears that Dr. Mayetta's sole aim was to treat Bright for his mental illness. Doctor Mayetta only "collaborated" with police when complying with her duty as a psychotherapist to inform the alleged victim and the Delaware police authorities of Bright's threats. *See discussion infra section II.C.* Since Dr. Mayetta's only objective in conversing with Bright was to treat his medical problems, the Fifth Amendment was not implicated. *Id.* at 681.

Moreover, the present case differs from the *D.F.* case since the *D.F.* patient confessed to her participation in crimes that had already occurred. Here, Bright did not admit to committing a past crime; rather, he made statements regarding actions he planned to take in the future. This fact further indicates that Dr. Mayetta did not intend, implicitly or otherwise, to elicit incriminating statements from Bright since, at the time she was questioning Bright, he had yet to commit a crime.

As such, Dr. Mayetta's actions did not implicate the Fifth Amendment. Doctor Mayetta was not acting as an agent for the prosecution. Doctor Mayetta did not coerce Bright into confessing his involvement in any crime so that he could be punished. Instead, Dr. Mayetta attempted to treat Bright for his mental impairments and during the course of that treatment she discovered that

---

**9.** The Court notes, for clarification purposes only, that the *A.R., Cortes, Battie* cases involved a different aspect of the Fifth Amendment than presented here. Those cases arose under the context of alleged *Miranda* violations and therefore involved the Amendment's prohibition against self-incrimination. However, as the *D.F.*

court stated "*Miranda* protects defendants against government coercion leading them to surrender their rights protected by the Fifth Amendment." *D.F.*, 63 F.3d at 680 n. 11 (citing *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)).

he intended to harm the victim. Accordingly, Dr. Mayetta properly disclosed the communications to prevent a possible homicide. Therefore, this Court holds that Bright has failed to demonstrate that his statements to Dr. Mayetta warrant suppression under the Fifth Amendment.

### B. The Federal Confidentiality Statutes Do Not Require Suppression.

■ Bright bases his next argument for suppression on a federal confidentiality statute. Bright contends that the statute precluded Dr. Mayetta from disclosing records of Bright's treatment. The Court finds that the federal confidentiality statute does not apply to the present situation. Furthermore, even if the statute did apply, the remedy would be a fine and not suppression of the evidence. Therefore, this Court holds that Bright's alternative theory for suppression is also without merit.

■ Bright argues that 42 U.S.C. § 290dd–2 requires this Court to suppress the statements made to Dr. Mayetta and the fruits resulting therefrom. Forty-two U.S.C. § 290dd–2, titled Confidentiality of records, provides that:

(a) *Requirement.* Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e), be confidential and be disclosed only for the purposes and under the circumstances expressly authorized in subsection (b).

The State, however, contends that Bright cited the wrong statute. According to the State, 42 U.S.C. § 290dd–2 does not apply to Bright since he is a Veteran of the Armed Forces. The State points to 42 C.F.R. § 2.12, under which the statute was implemented, which states in relevant part:

(c) Exceptions—

(1) Veterans' Administration. These regulations do not apply to information on alcohol and drug abuse patients maintained in connection with Veterans' Administration provisions of hospital care, nursing home care, domiciliary care, and medical services under title 38, United States Code. Those records are governed by 38 U.S.C. 4132 and regulations issued under that authority by the Administrator of Veterans' Affairs.

This Court, which grants considerable deference to the federal regulations promulgated by an agency pursuant to its governing statute, finds that 38 U.S.C. § 7332, the successor statute to 38 U.S.C. § 4132, is applicable to the present case. *See Chemical Mfrs. Ass'n v. Natural Resources Defense Council, Inc.,* 470 U.S. 116, 125, 105 S.Ct. 1102, 1107–08, 84 L.Ed.2d 90 (1985); *In re Seidman,* 37 F.3d 911, 924 (3d Cir.1994). The Court, however, will analyze Bright's claim under both statutes since the language of the statutes is analogous and reveal similar concepts. In fact, for the purpose of deciding this case, the only significant difference between these statutes is that 38 U.S.C. § 7332 applies to veterans and 42 U.S.C. § 290dd–2 pertains to all others in federally-assisted drug/alcohol treatment programs.[10]

■ Initially, on its face, defendant's claim is problematic. It appears that Dr. Mayetta disclosed the information she received in the context of treating Bright for his mental condition. In his motion, Bright lists as one of his diagnosis a *"History* of alcohol dependence" (emphasis added) and also claims that doctors at the V.A. hospital treated his men-

---

10. 38 U.S.C. § 7332, titled Confidentiality of certain medical records, provides:

(a)(1) Records of the identity, diagnosis, prognosis, or treatment of any patient or subject which are maintained in connection with the performance of any program or activity (including education, training, treatment, rehabilitation, or research) relating to drug abuse, alcoholism or alcohol abuse, infection with the human immunodeficiency virus, or sickle cell anemia which is carried out by or for the Department under this title shall, except as provided in subsections (e) and (f), be confidential, and (section 5701 of this title to the contrary notwithstanding) such records may be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b).

tal illness with drugs. Bright, however, never indicated that the V.A. hospital treated him for anything other than his mental condition. Therefore, it does not appear that doctors were treating Bright for substance abuse during the relevant period.[11] Accordingly, the federal statutes are not applicable absent a showing that Bright was receiving treatment for drug or alcohol abuse.

 Moreover, even if Bright was being treated for drug and alcohol abuse, the pertinent statutes would not protect these statements. The statements in question do not relate to his alleged alcohol treatment whatsoever.[12] The statutes confer confidential status to the "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient. . . ." 42 U.S.C. § 290dd–2; 38 U.S.C. § 7332. This Court agrees with Bright that courts should construe these statutes broadly to give effect to their underlying policies. Nevertheless, broad interpretation does not equate with absolute protection. The Court finds that Congress did not mean to confer confidential status on statements that have absolutely no connection to substance abuse treatment.

 Shielding Bright's threatening statements from disclosure contradicts the statutes and their intent. The purpose behind the enactment of both statutes is to encourage those suffering from alcohol or drug dependencies to seek treatment by assuring them that their privacy will be protected. *See In re B.S.*, Vt.Supr., 659 A.2d 1137, 1139–40 (1995) (citing *Whyte v. Connecticut Mutual Life Ins. Co.*, 818 F.2d 1005, 1010 (1st Cir.1987). *See also United States v. Eide*, 875 F.2d 1429, 1436 (9th Cir.1989). In enacting the Veterans' statute, Congress realized that "[p]ersons suffering from alcoholism or drug addiction are often fearful of social stigmatization or run-ins with law enforcement officials." S.Rep. No. 94–1206 part I, 94th Cong., 2d Sess. 116 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6408.[13] Therefore, protecting the statements at issue would be outside the scope of communication that Congress intended to protect. This Court's ruling does not discourage people from seeking professional help for their drug and alcohol problems, nor does it frustrate the work of alcohol and treatment facilities.[14] Accordingly,

---

11. The Code of Federal Regulations defines treatment as:

 [T]he management and care of a patient suffering from alcohol or drug abuse, a condition which is identified as having been caused by that abuse, or both, in order to reduce or eliminate the adverse effects upon the patient. **42 C.F.R. § 2.11.**

12. The Code of Federal Regulations states that the statute applies only to information relating to drug or alcohol use. Specifically, 42 C.F.R. § 2.12(e)(3) provides:

 (3) Information to which restrictions are applicable. Whether a restriction is on use or disclosure affects the type of information which may be available. *The restrictions on disclosure apply to any information which would identify a patient as an alcohol or drug abuser.* The restriction on use of information to bring criminal charges against a patient for a crime applies to any information obtained by the program for the purpose of diagnosis, treatment, or referral for treatment of alcohol or drug abuse. (Note that restrictions on use and disclosure apply to recipients of information under § 2.12(d)) (emphasis added).

13. The drafters of 42 U.S.C. § 290dd–2 had the same intent when enacting that statute:

 The authors of the original federal regulations specified two policy objectives of the general

prohibition against disclosure; both the enabling legislation and the regulations articulate these objectives. The first is a concept long associated with the testimonial privileges attaching to doctor-patient, lawyer-client, and priest-penitent relationships: the notion that protecting an individual's privacy will encourage openness and trust. The drafters of the federal regulations also identified a more unusual objective animating the law in this area: the idea was that is all treatment providers adhered to a comprehensive and rigorous confidentiality scheme, it would help to create a perception 'on the street' that it is safe to seek treatment for the highly stigmatized conditions of alcoholism and drug addiction. 42 C.F.R. § 2.4 (1975). *See* Richard C. Boldt, *A Study in Regulatory Method, Local Political Cultures, and Jurisprudential Voice: The Application of Federal Confidentiality Law to Project Head Start*, 93 Mich.L.Rev. 2325, 2330–2331 (1995) (citing 42 C.F.R. § 2.4).

14. Bright cites *United States v. Eide*, 875 F.2d 1429 (9th Cir.1989) in support of his argument that 42 U.S.C. § 290dd–2 prevents disclosure of the challenged statements. The *Eide* court suppressed a patient's hospital records and admissions. In so holding, the *Eide* court stated that a contrary ruling would discourage people from seeking professional help for substance abuse problems and would frustrate the work of alco-

these statutes do not shield Bright's statements from disclosure.

■ Furthermore, the relevant statutes both provide for disclosure in limited circumstances.[15] None of the sanctioned disclosure situations, however, squarely cover the circumstances presented here. Both federal statutes provide that disclosure may be made after a showing of "good cause." 42 U.S.C. § 290dd–2(b)(2)(C); 38 U.S.C. § 7332(b)(2)(D). While the Court finds that good cause exists here to reveal Bright's statements, it notes that both statutes require a court order prior to divulging the relevant information. Neither the State nor Dr. Mayetta obtained a Court order prior to disclosure. This omission, however, is not fatal to the State's intent to utilize the defendant's statements made to Dr. Mayetta for the reasons stated below.

### C. Physician and Psychotherapist–Patient Privilege

■ The Court finds that the federal confidentially statutes do not preempt state law on privileged communications. Previously,

this Court has noted that "[c]ourts are reluctant to find federal preemption because of their interest in avoiding unintended encroachment on the authority of a state." *Figgs v. Bellevue Holding Co*, Del.Super., 652 A.2d 1084, 1088–89 (1994) (citing *Myrick v. Freuhauf Corp.*, 13 F.3d 1516 (11th Cir. 1994)). This Court further stated that "[o]nly when Congress' intent to provide preemption is clear and manifest will Courts allow such measures." *Figgs*, 652 A.2d at 1089. The Court finds that the statutes in question do not make it "clear and manifest" that Congress intended to preempt state law on this issue. In fact, 42 C.F.R. § 2.20 specifically states that:

> The statutes authorizing these regulations . . . do not preempt the field of law which they cover to the exclusion of all State laws in that field. If a disclosure permitted under these regulations is prohibited under State law, neither these regulations nor the authorizing statutes may be construed to authorize any violation of that State law. However, no state law . may

hol and drug treatment facilities. *Id.* at 1437. In *Eide,* the defendant pharmacist, who was employed by the V.A., confessed his drug abuse to his supervisor. The supervisor took the pharmacist to the V.A. hospital for treatment. It is important to note that the pharmacist was not previously a hospital client and was not a veteran. A week later, drugs were missing from the pharmacy and the F.B.I., was contacted. Upon receiving the emergency room records relating to the pharmacist's urinalysis, the F.B.I. questioned him and secured a written confession. Subsequently, the pharmacist telephoned the F.B.I. and made further admissions. The *Eide* court held that 42 U.S.C. § 290dd–2's predecessor shielded the records and admissions from the emergency room. However, the Court also held that the V.A. supervisor was not a state actor for purposes of the Fifth Amendment because he was not acting in a criminal investigation or prosecutorial function when he questioned the defendant on stealing drugs. This Court, however, concludes that the *Eide* case differs from the present case in several relevant respects. First, the *Eide* case like the *D.F.* case, involved a confession to crimes that the defendant had previously committed. Second, the *Eide* case is factually different from Bright's case since it is clear that *Eide* was a patient seeking treatment for drug abuse. Third, in *Eide,* the records and admissions in question clearly related to his drug treatment. Finally, in *Eide,* the statements made in the emergency room were cumulative proof of the

crime charged and therefore the public interest did not override the purpose of the statute. In this case, Dr. Mayetta's testimony is not cumulative evidence of the crime.

**15.** Both sections permit disclosure 1) when the patient consents; 2) to medical personnel to the extent necessary to meet a bona fide medical emergency; 3) to qualified personnel for the purpose of conducting scientific research, management audits, financial audits, or program evaluation, but such personnel may not identify, directly or indirectly, any individual in any report if such research, audit, or evaluation, or otherwise disclose patient identities in any manner; and 4) if authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

42 U.S.C. § 290dd–2(b); *accord* 38 U.S.C. § 7332(b).

either authorize or compel any disclosure prohibited by these regulations.

Accordingly, the Court finds that the state law of privileges co-exists with the federal confidentiality statutes.

■ Indeed, it makes perfect sense that the confidentiality statutes exist along with the well-recognized law of privileges, namely the physician and psychotherapist-patient privilege.[16] The federal statutes and the law of privilege both encompass a similar purpose: To facilitate communication between the patient and the therapist. Therefore, Bright also argues that Dr. Mayetta's disclosure violated the psychotherapist-patient privilege.

A United States District Court explained the relationship between the federal confidentiality statutes and the federal law of privilege as follows:

> [T]here is no basis to assume that Congress, by enacting these provisions, intended to repeal a court's authority under Federal Rule of Evidence 501, to create and apply evidentiary privileges in these situations. In fact, given the 'express purpose of this provision is to encourage patients to seek treatment for substance abuse without fear that by so doing, their privacy will be compromised,' indicating that the goals of the statute and the psychotherapist-patient privilege are identical, *both methods of record protection can co-exist in harmony.*

*In re August, 1993 Regular Grand Jury,* 854 F.Supp. 1392, 1395 n. 2 (S.D.Ind.1993) (emphasis added) (citation omitted). Therefore, this Court concludes that the physician and psychotherapist-patient privilege exists along with the confidentiality statutes. Accordingly, if the privilege co-exists with the statutes, then it follows that the exceptions to the privilege also exist. Put another way, the federal statutes do not preempt the state law

of privileges; thus, the federal statutes do not preempt the exceptions to the privilege.

By holding that the exceptions to the privilege apply in this situation does not mean this Court is authorizing or compelling any disclosure that is prohibited by the statutes in violation of 42 C.F.R. § 2.20. Both statutes fully recognize that there are times when the disclosure is necessary for "good cause." Applying the state law of privilege, however, obviates the need for a court order to disclose such information.

■ Turning to the case *sub judice,* the Court finds that a well established exception to the physician and psychotherapist-patient privilege covers the very situation before the Court. Although mental health professionals have a duty of confidentiality to their patients, they also have an affirmative duty to persons other than the patient to exercise reasonable care in the treatment and discharge of such patients. *Naidu v. Laird,* Del.Supr., 539 A.2d 1064, 1072 (1988). Reasonable care, in this context, includes a "duty to warn potential victims or a class of potential victims and/or control, to some appropriate degree, the actions of the patient." *Id.* at 1073.

■ Warning potential victims of a patient's dangerous propensities is known as the *Tarasoff* duty. In *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), a psychiatric patient confided to his therapist that he intended to kill a woman, Tatiana Tarasoff. Two months later, the patient carried out his threat: no one had warned Tatiana. The victim's parents brought suit against the therapist. The California Supreme Court held that psychotherapists have an affirmative duty to warn their patients' potential victims. In so holding, the Court stated:

> When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a seri-

---

**16.** D.R.E. 503 contains Delaware's Physician and Psychotherapist–Patient Privilege. This rule states, in pertinent part, that:

"(b) *General Rule of Privilege.* A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the diagno-

sis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself [and] his physician or psychotherapist...."

A "confidential communication" is defined as any communication "not intended to be disclosed to third person...." D.R.E. 503(a)(4).

ous danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more of various steps, depending upon the nature of the case. ***Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.***

*Tarasoff,* 131 Cal.Rptr. at 20, 551 P.2d at 340 (emphasis added). The *"Tarasoff* duty to warn" applies in cases involving "outpatients," like Bright, since the relationship between the therapist and his or her patient is "sufficient to create a duty to exercise reasonable care to protect a potential victim of another's conduct." *See Peck v. Counseling Serv. of Addison County,* Vt.Supr., 499 A.2d 422 (1985) (quoting *Tarasoff,* 131 Cal. Rptr. at 23, 551 P.2d at 343).

In relevant respects, the *Tarasoff* situation resembles the circumstances presented in the case *sub judice.* Doctor Mayetta fulfilled her duty to warn the alleged victim and the authorities; thus, preventing her patient, Bright, from carrying out his threats.

■■ Accordingly, the Court holds that the federal confidentiality statutes do not replace the state law of privilege or any exception thereto.[17] Therefore, the physician and psychotherapist-patient privilege, and it exceptions, are applicable to the present situation. As such, the *Tarasoff* duty also applies to this case. Consequently, Dr. Mayetta's actions in warning the police and the

victim were entirely proper, and, indeed commendable.

■■ Finally, this Court holds that even if either of the federal confidentiality statutes applied to the present case, suppression of the evidence would not be warranted. The remedy under both statutes is a fine for any offense of the section. 38 U.S.C. § 7332(g); 42 U.S.C. § 290dd–2(f); *see also State v. Boobar,* Me.Supr., 637 A.2d 1162 (1994) (stating that 42 U.S.C. § 290dd–2 does not operate as a rule of evidentiary privilege or exclusion; instead it provides for a fine in the event of a violation).

### *III. CONCLUSION*

The Court concludes that Dr. Mayetta's actions in warning the police and the alleged victim of Bright's threats to the alleged victim did not violate the Fifth Amendment or the federal confidentiality statutes. Rather, the Court finds that Dr. Mayetta fulfilled her affirmative duty under the exception to the psychotherapist-patient privilege to take reasonable steps necessary to protect third parties from dangerous patients.[18] Accordingly, Bright's Motions to Suppress should be and hereby are **DENIED.**

It is So ORDERED.

---

17. Even assuming the existence of a physician and psychotherapist-patient privilege with regard to the defendant's statements made to Dr. Mayetta, his subsequent disclosure of similar statements to his ex-wife constitute a waiver of the privilege. *See Weedon v. State,* Del.Supr., 647 A.2d 1078, 1082 (1994) (holding that defendant waived marital privilege by subsequent disclosure of the privileged communication to third parties). *See also* D.R.E. 510 which states in pertinent part that "A person upon whom these rules confer a privilege against disclosure waives the privilege if he ... voluntarily discloses ... any significant part of the privileged matter...."

18. The United States Supreme Court recently recognized that confidential communications between a patient and his or her psychotherapist are privileged from compelled disclosure under Federal Rule of Evidence 501. *Jaffee v. Redmond,* 518 U.S. ——, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). At the same time, the Court noted that "there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." 518 U.S. at ——, n. 19, 116 S.Ct. at 1932, n. 19, 135 L.Ed.2d at 349–50, n. 19.