**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

RAMONA BRANT,
Defendant-Appellant.

No. 94-5813

NATIONAL CLEARINGHOUSE FOR THE
DEFENSE OF BATTERED WOMEN;
NATIONAL ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS; NATIONAL LEGAL
AID AND DEFENDER ASSOCIATION,
Amici Curiae.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                          No. 95-5128

DONALD RAY BARBER,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge; Richard L. Williams,
Senior District Judge, sitting by designation.
(CR-93-124)

Argued: March 6, 1997

Decided: May 5, 1997

Before MICHAEL and MOTZ, Circuit Judges, and
GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed in part and vacated and remanded in part by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Kenneth Hall Epple, Jr., Charlotte, North Carolina, for Appellants. Gretchen C. F. Shappert, Assistant United States Attorney, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Randolph Marshall Lee, Charlotte, North Carolina, for Appellant Barber. Mark T. Calloway, United States Attorney, Charlotte, North Carolina, for Appellee. Haakon Thorsen, Charlotte, North Carolina; Jill Spector, NATIONAL CLEARINGHOUSE FOR THE DEFENSE OF BATTERED WOMEN, Philadelphia, Pennsylvania; Fred Warren Bennett, Associate Professor of Law, Columbus School of Law, CATHOLIC UNIVERSITY OF AMERICA, Washington, D.C., for Amici Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Donald Barber and Ramona Brant, who married after their arrest and indictment, were convicted in a jury trial of conspiracy to possess with the intent to distribute and to distribute cocaine. See 21 U.S.C. §§ 841(a)(1) and 846. The district court sentenced both to life imprisonment. Barber appeals his sentence, claiming that the district court improperly applied the sentencing enhancement provision, see 21 U.S.C. § 841(b)(1)(A), and the sentencing guidelines. Brant appeals her conviction and sentence, claiming that her rights to due process and effective assistance of counsel were violated when the district court failed to provide an ex parte hearing on, and then denied, her motion for appointment of a psychiatrist. She also contends that the district court applied the sentencing guidelines incorrectly. Finding no

2

error with regard to Barber, we affirm his sentence. We affirm Brant's conviction but vacate her sentence and remand for resentencing.

I.

Neither Barber nor Brant argue that the evidence was insufficient to convict them of conspiracy. Three of Barber and Brant's co-conspirators (Christopher Durante, Orlando McClarity, and Louis Gilmore), one of Barber's customers (Wesley Hunter), and several police officers testified for the government. Barber's telephone and credit card records were introduced to corroborate testimony about trips to buy drugs and contacts with members of the conspiracy. The evidence established that Barber and Brant operated an extensive cocaine distribution ring in the Charlotte, North Carolina, area. They obtained drugs from suppliers in New York and Florida. Bodyguards armed with guns often accompanied them on their drug runs. Once the bulk quantities of drugs reached Charlotte, Barber and Brant supplied the members of their distribution network.

II.

Barber raises several challenges to his sentence.

Because Barber was found guilty of violating 21 U.S.C. § 841(a), the district court applied the sentencing enhancement provision, 21 U.S.C. § 841(b)(1)(A). Section 841(b)(1)(A) provides that if the defendant has two or more prior felony drug convictions and the instant offense involves drug amounts reaching certain quantities, the district court must impose a sentence of life imprisonment. Before his conviction in this case, Barber had three convictions in state court arising from three cocaine sales he made to an undercover officer over a period of forty-two days. The district court accepted the government's argument that the three prior convictions constituted three separate offenses and therefore sentenced Barber to life imprisonment. Barber contends that his three prior convictions should be treated as one offense so that the enhancement under § 841(b)(1)(A) does not apply.

We noted in United States v. Blackwood, 913 F.2d 139, 145-46 (4th Cir. 1990), that "Congress has indicated both in § 841(b) itself

3

and elsewhere that the language `prior' or `previous convictions,' when used for sentencing enhancement, means separate criminal episodes, not separate convictions arising out of a single transaction." Later, in United States v. Ford, 88 F.3d 1350 (4th Cir. 1996), we said that "separate acts of distribution that occur on different days or even at different times on the same day constitute separate criminal episodes." Id. at 1365-66. Here, the officer who made the undercover buys in the state cases testified that he made three hand-to-hand buys from Barber: one on October 10, 1986; one on October 13, 1986; and one on November 20, 1986. Because the sales involved separate acts and occurred on different days, the district court did not err when it concluded that the prior convictions were for "separate criminal episodes." Id.; see also United States v. Garcia, 32 F.3d 1017, 1019 (7th Cir. 1994) (noting that prior criminal activity involved separate criminal episodes for purposes of sentence enhancement because the second and third events occurred after defendant had an opportunity to cease criminal activity).

Barber next contends that the district court's findings as to the drug amounts attributable to him were clearly erroneous. The district court determined that 183 kilograms of powder cocaine and 97 kilograms of crack cocaine were attributable to Barber. He maintains that there are "credibility gaps" in the testimony of the witnesses the district court relied on in arriving at its calculation. Barber's argument is essentially futile. Because of his prior criminal record he was subject to life imprisonment if the government showed that at least five kilograms of cocaine or 50 grams of crack were involved in the offense. See 21 U.S.C. § 841(b)(1)(A). Virtually every witness who testified referred to amounts greater than these statutory minimums. In any event, there was ample testimony to support the district court's findings on drug quantities attributable to Barber, and we have no basis to conclude that the district court clearly erred. See United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994).

Finally, Barber challenges the district court's application of U.S.S.G. § 3B1.1(a), which requires a four-level enhancement if the defendant was an organizer or leader of a criminal activity involving five or more participants. Barber contends that the evidence did not support this enhancement. We disagree. The evidence was overwhelming that Barber was a leader or organizer of a group that dis-

4

tributed drugs. For example, each co-defendant who testified portrayed Barber as the leader of the ring. Barber recruited bodyguards and armed them. Additionally, he and Brant made drug runs to Florida and New York where they acquired wholesale quantities of cocaine. Brant, in turn, broke these quantities down and distributed the drugs to his various sellers in the Charlotte area. The facts therefore support the four-level enhancement under § 3B1.1(a).

III.

We turn now to Brant, whose claims largely arise from her allegation that Barber physically and mentally abused her during the period of the conspiracy. Initially, Brant entered into a plea agreement, signed August 11, 1994, in which she promised to help the government with its case against Barber. In return, the government agreed that evidence of duress or coercion would be presented to the court at sentencing. However, at Brant's Rule 11 hearing, held on September 11, 1994, she refused to enter a guilty plea and instructed her lawyer to cooperate with the lawyer defending Barber. Seven days later, on September 18, 1994, Brant and Barber got married.

In light of these events, Brant's lawyer filed an ex parte motion, pursuant to 18 U.S.C. § 3006A(e), asking that a psychiatrist be appointed to assist with Brant's defense.* Although section 3006A(e) calls for such a motion to be determined in ex parte proceedings, the district court conducted an off-the-record telephone conference with Brant's lawyer and the prosecutor. The district court then issued an order that said "for the reasons stated in the conference call the motions are DENIED."

Brant contends that the district court erred when it failed to hold an ex parte hearing on her motion and failed to appoint a psychiatrist. In Lawson v. Dixon, 3 F.3d 743 (4th Cir. 1993), we said that

_____

*Section 3006(A)(e) states that "[c]ounsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services."

5

§ 3006A(e) "virtually guarantee[s] that decisions on expert-appointment motions will be made, as the statute requires, after appropriate inquiry in an ex parte proceeding." Id. at 751. However, while an appropriate inquiry is necessary, the statute does not require the district court to "hold[ ] formal hearings for their own sake." Id. at 753. In Brant's case, therefore, the absence of a formal hearing is not dispositive. The question is whether the conference call was an "appropriate proceeding" for purposes of section 3006(A)(e). Because the conference call was not on the record, we have no indication of the nature or extent of the inquiry into whether the appointment of a psychiatric expert was necessary to Brant's defense. Nor do we have any indication of the court's reasons for denying the motion for an expert. Because we are in the dark, we cannot conclude that there was an "appropriate inquiry in an ex parte proceeding." This does not end our inquiry, however.

Brant's lawyer did not object (at the time of the conference call) to the prosecutor's participation or to the nature of the proceeding. If Brant's argument was limited to these procedural points, we would apply a plain error analysis. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). Brant, however, preserved her objection on the substantive issue, that is, on the denial of the motion to appoint a psychiatric expert. In this instance the substantive issue subsumes the procedural one because both issues require some level of examination into the effect of the district court's refusal to appoint a psychiatrist. As a result, we believe it is appropriate to accord Brant the benefit of the usual analysis when a point has been preserved for appeal.

We move, then, to the applicable standard: the decision not to appoint an expert lies within the sound discretion of the district court and will not be disturbed absent a showing of prejudice. United States v. Bercier, 848 F.2d 917, 919 (8th Cir. 1988). Brant would have been prejudiced by the denial of the motion only if it prevented the presentation of a meritorious defense of duress or coercion. See United States v. Pofahl, 990 F.2d 1456, 1472 (5th Cir. 1993). To succeed on such a defense, Brant would have had to show (1) that she was under a present threat of death or serious injury, (2) that she did not recklessly place herself in a situation where she could be forced to engage in criminal conduct, (3) that she had no reasonable legal alternative,

6

and (4) that a direct causal relationship existed between her criminal conduct and the avoidance of threatened harm to her. United States v. Perrin, 45 F.3d 869, 873-74 (4th Cir. 1995).

As far as the guilt phase of Brant's case is concerned, the general allegations in her ex parte motion for the appointment of a psychiatrist are all that bear on her claim of duress. See Pofahl, 990 F.2d at 1472. "General allegations supporting a request for court appointment of a psychiatric expert, without substantive supporting facts, and undeveloped assertions that psychiatric assistance would be beneficial to the defendant will not suffice to require the appointment of a psychiatrist to aid in preparation of a criminal defense." Liles v. Suffle, 945 F.2d 333, 336 (10th Cir. 1991).

Brant's motion alleges generally that there was a history of abuse, but it fails to connect the alleged abuse with Brant's criminal acts. For example, the motion states that Brant informed her lawyer that she did not want to assert a defense of duress, that she wanted to cooperate with Barber's lawyer, and that she did not want a psychiatrist appointed. The motion, however, does not attribute these developments to threats or coercion by Barber. In fact, at the time of Brant's motion Barber had been in jail for nearly nine months.

When we move from the motion and review the trial record, we find no evidence to suggest that Brant could have mounted a successful legal defense of duress. For example, Christopher Durante testified that Brant was the link to a drug supplier in New York. Wesley Hunter testified that on at least one occasion he received "bad" cocaine from Barber. When Hunter went to Barber's residence to complain, he saw Brant holding what looked like an Uzi. It was Brant who scolded Hunter for cooking the entire batch (one-half kilogram) without test cooking a small quantity. She said,"why didn't you just cook a little of it up and when it lost, then just bring it back then?" Finally, Brant told Hunter that if he caused any more trouble he "could get messed up." Brant presented no evidence of duress or abuse, and her lawyer elicited no testimony from any of the witnesses on cross-examination that they saw evidence of abuse. From all of this, we conclude that Brant could not have made the requisite showing for the appointment of a psychiatrist. She therefore suffered no prejudice, and our inability to determine whether the district court

7

conducted an "appropriate proceeding" on the motion for a psychiatrist is of no consequence.

Brant next argues that if we affirm her conviction, we should vacate her sentence and remand for further proceedings because the district court misapplied the sentencing guidelines when it prevented her from presenting evidence of abuse at sentencing."[I]n reviewing the application of the guidelines by a district court, we examine factual determinations for clear error; legal questions, however, are subject to a de novo standard of review." United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996).

Before sentencing Brant filed a motion requesting the issuance of subpoenas to witnesses whom Brant says would have helped establish duress and coercion for sentencing purposes. Brant also submitted medical records and police reports to support the claim at sentencing. U.S.S.G. § 5K2.12 allows a court to decrease the sentence below the applicable guideline range if the defendant committed the offense because of serious coercion, blackmail or duress, even if the circumstances do not amount to a complete legal defense. The district court denied Brant's motion to subpoena witnesses, stating that "[a]t trial, Ms. Brant made no effort to present a defense of coercion or duress. Thus, presentation of such an argument at the sentencing phase of her case would be inappropriate." Thus, the district court did not consider whether Brant was subjected to coercion to a degree sufficient to warrant departure under § 5K2.12.

The district court made the legal determination that it could not consider the duress argument because it had not been presented at trial. This was error. The failure to present an argument at trial does not preclude a defendant from presenting a similar argument at sentencing. "In determining the sentence to impose within the guidelines range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." See U.S.S.G.§ 1B1.4. This principle is particularly appropriate in the case of duress that does not qualify as a complete legal defense. In such a case, the defendant might make the decision to forego asserting duress at trial to avoid admitting the commission of a criminal act. Section 5K2.12 of the sentencing guidelines

8

does not punish such a decision because it allows departure even if the evidence is insufficient to establish a complete defense.

In light of the district court's erroneous conclusion that it could not consider Brant's argument of duress at sentencing, we vacate her sentence and remand for resentencing. See United States v. Cheape, 889 F.2d 477 (3d Cir. 1989) (vacating and remanding for resentencing because district court misapprehended its authority to depart under U.S.S.G. § 5K2.12). In resentencing, the district court should determine whether departure is warranted under U.S.S.G.§ 5K2.12. In making that determination, the district court may consider the information previously offered as well as any additional evidence that is relevant.

IV.

For the foregoing reasons, Barber's sentence is affirmed. Brant's conviction is affirmed, but her sentence is vacated and remanded for resentencing in light of this opinion.

AFFIRMED IN PART; VACATED
AND REMANDED IN PART